R. OLSEN and Laureada B. Olsen, Plaintiffs in Error,

v.

G. J. JONES, Pasotex Petroleum Company and Cabeen Exploration Corporation, Defendants in Error.

No. 39815.

Supreme Court of Oklahoma.

March 15, 1966.

Robinson, Robertson & Barnes, by T. Murray Robinson, J. Stanley Gill, Oklahoma City, for plaintiffs in error.

Brown, Darrough & Darrough, by Rex K. Travis and Harry C. Marberry, Oklahoma City, for defendants in error Pasotex Petroleum Co. and Cabeen Exploration Corporation.

J. W. Dixon, Marietta, for defendant in error G. J. Jones.

IRWIN, Justice.

To clarify the facts and issues, three Plats are presented. Plats #1 and #3 show the channel of Red River for the years 1899 and 1956, respectively. Plat #2 shows the boundary line between Love County, Oklahoma, and Cook County, Texas in 1940. Although the boundary line in Plat #2 follows the channel of the river, the boundary line as shown on the exhibit from which Plat #2 was drawn, is more distinct than the channel of the river. Therefore, the boundary line, instead of the channel, is shown in Plat #2.

This is a quiet title action and involved the ownership of the tract of land in section 9, which is designated in the Plats above as "Tract in Dispute", and was in the State of Texas in 1899. (See Plat #1). By change in the course of Red River, this tract or at least most of it, was in Oklahoma by 1940 (see Plat #2) and is still in Oklahoma. (See Plat #3). The primary issue herein involved is whether accretion or avulsion occurred. Defendants in error contend accretion occurred and plaintiffs in error argue avulsion occurred. The trial court sustained the contentions of defendants in error.

Defendants in error were plaintiffs in the trial court and will be referred to as plaintiffs or by name. Plaintiffs commenced this action to quiet their title and interest in the tract in dispute against defendants who claim record title to the property.

The record discloses that on September 21, 1959, Mary L. Reeves conveyed to plaintiff G. J. Jones the lands designated as the "Reeves Tract" in section 8 (see Plat #1), "together with all accretions thereto".

On February 25, 1960, plaintiffs, in an amended petition, inter alia, alleged that plaintiff G. J. Jones was the owner and in possession of the "Reeves Tract" and the following lands which abut on and have accreted to the "Reeves Tract" which were described as all the lands in section 8, except the "Reeves Tract", and the west half of section 9, lying west of the south bank of the Red River. (No issue is presented concerning ownership of any of the land described in the amended petition except the tract involved in this action).

Plaintiffs further alleged that G. J. Jones and his predecessors in title had been in possession of all the described lands for a period of more than fifteen (15) years and had paid the taxes on said lands for a period of more than five (5) years. It was further alleged that plaintiffs Paso-tex Petroleum Company and Cabeen Exploration Corporation are the owners of a valid and subsisting oil and gas lease on the property by virtue of an oil and gas lease executed by Mary L. Reeves who conveyed the lands to G. J. Jones. It was further alleged that all of the lands, except that designated as the "Reeves Tract", was formerly situated in Cook County, Texas, and said tract lay south and east of the south bank of the Red River, but that by gradual accretion the said Red River changed its course so that said lands now lie north of the south bank of Red River and are now situated in Love County, Oklahoma.

In an answer filed by defendants, they denied all of the allegations and demanded strict proof thereof.

## FACTS

Several maps and aerial photographs were introduced in evidence.

A Mr. Potts, a geologist who had made a special study of sand conditions relative to distribution by streams—fluvial deposits, as well as shallow marine deposits, testified as an expert for plaintiffs. He had made a personal investigation of the area, studied aerial photographs and surface surveys and other pertinent information. In his opinion, the old channel of Red River which cut through section 8 in a north-south direction in 1899 (see Plat #1) gradually moved in an eastward and slightly southerly direction. (This change can be seen by comparing Plats #1 and #2). In his opinion there was no sort of stream in section 8 or 9 which was west of the main channel in 1940, as shown by Plat #2, but this was solid ground.

Plaintiffs' expert witness then pointed out that the channel was in section 17 in 1940 (see Plat #2) and that it had moved northward to section 8 by 1956, and that it had formed an ox-bow in section 8. (See Plat #3). He also pointed out the eastward and southerly movement of an ox-bow which was in section 5 in 1940 (see

Plat #2) to section 4 by 1956. (See Plat #3).

In answer to a question as to whether the change in location of Red River, and the attaining of lands to the Mary Reeves Patent lands had taken place by gradual accretion, or had taken place by sudden change, he stated: "I would say that without any doubt in my mind, from my experience, this shows that it has taken place by accretion in a very gradual, ordinary fashion". He also stated that the movement of the channel from 1899, as it moved eastward through section 8 to the western part of section 9, took the "majority of—it has moved that far in sixty years". In his opinion the remnant stream channel cut bank line in sections 5, 4, 8 and 9, show a gradual accretion and movement to the south and east, i. e., from section 5 to section 4, and from section 8 to section 9.

The expert witness also testified that the ox-bow in the west half of section 8 (see Plat #3) is a very late topographical feature, and its position came about at a much later date than the channel which occupies the west half of section 9, and the channel of Red River, as it runs through section 9, has not changed any appreciable amount since 1940.

Plaintiff Jones testified that the east line of the channel (referring to the channel running through section 9 on Plats #2 and #3) had changed very little in the last 20, 30 or 40 years; that there has been no sudden changes in this channel; and that he had been along there every year for 30 years. Plaintiff further testified that certain lands that had once been on the Oklahoma side of Red River was now on the Texas side, but this land was that portion of the west half of section 8, as shown in Plat #3.

Plaintiff Jones further testified as to his payment of taxes and the payment of taxes by Mrs. Reeves, his grantor; and their exclusive possession and control of the property.

A Mr. Hicks testified concerning the change of the channel in section 8 after 1940, but his testimony concerning the change in the channel in section 9 since 1922 was to the effect that at the present time "it's a wee bit east of where it was in 22". Later on he stated that since 1922 the channel in section 9 may have moved eastward "maybe a half a mile" but that it was by gradual process.

Other witnesses testified on behalf of plaintiffs but the pertinent parts of their testimony which showed a material change in the channel related to the channel as it now exists in section 8 and not the channel running through section 9.

A witness for defendants testified that he observed a sudden change in the channel in section 9 in the 1920's but the other changes he discussed related to sections 4 and 5.

Defendant Olsen testified that he had owned the property in question since 1928; that he paid taxes on the property in Cook County, Texas; that the channel running through section 9 was "pretty close to the west property line * * *" in 1928; (this would be the dividing line between sections 8 and 9). Defendant Olsen further testified that due to the 1941 flood, the channel running through section 9, moved eastward approximately one-half of a mile. He also testified that he had not used the land on the Oklahoma side of Red River since 1941, because the river interferred.

## JUDGMENT

The trial court found, inter alia, that plaintiff G. J. Jones, and his predecessors in title had been in possession of all the lands for a period of more than fifteen years and had paid taxes on the property for more than five (5) years; that the plaintiff oil companies had a valid and subsisting oil and gas lease; and that by gradual accretion Red River had changed its course so that the lands which were originally within the State of Texas are now within the State of Oklahoma.

The trial court rendered judgment in favor of plaintiffs quieting their title and defendants have appealed from the order overruling their motion for a new trial.

## PROPOSITION I

Defendants contend the trial court erred in quieting title in plaintiffs for the reason that the changes in Red River were visible, substantial and preceptible, occurring by avulsion instead of by accretion, thereby causing no change in boundaries.

To sustain this contention defendants argue that the doctrine of avulsion applies when the change in a river is by a sudden, perceptible eating away of the banks as well as when the river abandons its old channel and cuts a new one; that changes in riparian status by reason of avulsion do not work a change in boundaries; and that this Court defined the term "avulsion" in Buchheit v. Glasco, Okl., 361 P.2d 838, quoting from "American Law of Property", Vol. 111, Sec. 15.26, p. 855, wherein it is stated:

> " 'Avulsion is the sudden change of the banks of a stream such as occurs when a river forms a new course by going through a bend, the sudden abandonment by a stream of its old channel and the creation of a new one, or a sudden washing from one of its banks of a considerable quantity of land and its deposit on the opposite bank.' "

Defendants recognize however, in this Court's determination as to whether "avulsion" or "accretion" occurred, that this is an action of purely equitable cognizance. Being an action of purely equitable cognizance this Court will weigh and examine the evidence, but will not disturb the judgment of the trial court unless it is clearly against the weight of the evidence. See Starnes v. Barker, Okl., 340 P.2d 463.

In Bauman v. Choctaw-Chickasaw Nations, 10 Cir., 333 F.2d 785, we find this language:

> " * * * 'Accretion' denotes the process by which the area of owned land is increased by the gradual deposit of soil due to the action of a bounding river or other body of water. Accretion occurs when the change in the river is gradual and imperceptible. The gradualness of the process distinguishes accretion from the more rapid, easily perceived, and sometimes violent, shifts of land incident to floods, storms or channel breakthroughs known as 'avulsion.' A sudden change in the channel of a river, as occurs in the case of avulsion, does not affect title to the lands thus transferred from one side of the river to the other."

In examining the plats, aerial photographs and maps, we find they conclusively disclose that the channel of Red River that cut through section 8, north and south, in 1899, had moved eastward across the remainder of section 8 and into section 9 by 1940. By such change all of section 8 and the western portion of section 9 were within the State of Oklahoma. The expert witness of plaintiffs testified unequivocally that this change in the river channel was gradual and it was by accretion and not by avulsion.

In comparing the aerial photograph of 1940 with the aerial photograph of 1956 (from which Plats #1 and #2 were prepared) we find no material change in the channel across section 9, except that it has moved eastward to some extent. The record discloses that there has been no material changes in the channel of the river across section 9 between 1956 and the date of trial.

A comparison of the aerial photographs of 1940 and 1956 (from which Plats #2 and #3 were prepared) does disclose a material change in the channel of the river. In 1940 there was no river channel in section 8, but in 1956 the channel cut through almost the western half of section 8. In 1940 the channel surrounded the southeast portion of section 5, but in 1956 the channel had moved from section 5 into the southern half of section 4. However,

neither of these changes materially affected the channel where it cut through section 9 and the tract in dispute is located in section 9.

■ In examining the entire record and weighing the evidence, which we must do in a case of equitable cognizance, we can not say that the judgment of the trial court which found the change in the channel of Red River from the western half of section 8 in 1899 to the west part of section 9 in 1956, was by gradual accretion is clearly against the weight of the evidence. We therefore hold that the change in the channel of Red River from the west part of section 8 to the west part of section 9 was by accretion and not by avulsion.

### PROPOSITION II

Defendants contend that plaintiffs have failed to establish their title to the land claimed herein. They argue that if we assume that there is no issue of avulsion and that all the changes on the banks of Red River had occurred by the slow imperceptible process of accretion, the position of plaintiffs would not be enhanced for the reason that they failed to show that the land claimed as accretion to the tract designated as the "Reeves Tract" in Plat #1, actually began its formation initially from such tract.

Plat #1 shows that the "Reeves Tract" included all the land in section 8 that was located on the Oklahoma side of Red River in 1899 and this is not controverted. Plat #2 shows that Red River had moved eastward across the remainder of section 8 and into section 9 by 1940. Plaintiff alleged ownership and possession of all the land included in section 8 and the land in question and other lands in section 9 west of Red River.

Title 60 O.S.1961, § 335, provides that where from natural causes land forms by imperceptible degrees upon the banks of a river or stream, either by accumulation of material or by recession of the stream, such land belongs to the owner of the bank, sub-

ject to any existing right of way over the bank.

In Stone v. McFarlin, 10 Cir., 249 F.2d 54, it is stated that Oklahoma adheres to the common law that accretions became the property of the owner of the adjoining land. In that case the court determined that where the bed of a non-navigable stream shifted to the south and east by gradual, imperceptible and wearing and washing away of sands and soil, and at the same time, by gradual alluvion and reliction, soil was accumulated to the north bank of the stream so that after many years the lot on the north side of the stream had been extended to include a substantial portion of the lot on the south side of the stream, the accretions became property of the owner of the lot on the north side of the stream. Title 60 O.S.1961, § 335, was considered by the court in reaching its conclusion.

In Goins v. Merryman, 183 Okl. 155, 80 P.2d 268, we said that in applying the law of accretion and avulsion, it is immaterial whether the river or stream is navigable or non-navigable, as the same principles apply to each.

■ The record discloses that the predecessors in title of plaintiff G. J. Jones owned all the land on the west bank of Red River in section 8. After 1899 the river moved gradually eastward and as additional lands accreted, such land became a part of the original tract. By further movement of the river, additional lands accreted until the tract in question became a part of the land originally owned by the predecessor in title of plaintiff G. J. Jones. We therefore hold that plaintiffs did establish their title to the land herein involved.

Under this proposition, defendants contend that neither the deed under which plaintiff G. J. Jones claims nor the oil and gas lease under which the remaining plaintiffs claim convey to the plaintiffs any interest whatsoever to the lands located east of the Red River as it existed at the time of the execution of the deed and lease.

Defendant argues that when the conveyance to G. J. Jones was made and the oil and gas lease was executed, all of the specifically described land (being the Reeves Tract) was either in Texas or between the cut banks of the river bed and under such circumstances the conveyance and oil and gas lease passed only the accretions between the specifically described lands and the river which existed at the time of the execution of the conveying instruments.

The cut bank or portion of the river referred to in this argument is that portion in section 8 which came into being after 1940 and not that portion of the channel that cuts through section 9.

For clarification of this contention, reference is made to that portion of land lying south and west of Red River in section 8 as shown in Plat #3. Defendants contend that the deed to G. J. Jones and the oil and gas lease to the other plaintiffs covered only this land and did not include the remaining land in section 8 or any part of section 9.

Plaintiffs' exhibit #2 and an exhibit in defendant's brief conclusively show that the north portion and the southeast portion of the specifically described land, being the same as the Reeves Tract, as shown in Plat #1, was on the Oklahoma side of Red River when the conveyance was made and the oil and gas lease was executed. However, prior to the formation of this ox-bow in the western portion of section 8, which now separates a part of the original Reeves Tract from the land that accreted to said tract, all of the remaining portions of section 8 and part of section 9, which includes the tract involved herein, had become a part of the "Reeves Tract" by accretion.

In our opinion the conveyance to G. J. Jones and the oil and gas lease in favor of the remaining plaintiffs was sufficient to include all the right, title and interest Mary Reeves had in the original tract and any and all accretions thereto.

Judgment affirmed.