2010 OK CIV APP 65

### Hector HERNANDEZ and Tonya Goesch, Plaintiffs/Appellees,

v.

### Roy D. REED and Diana L. Reed, Defendants/Appellants,

and

### Countrywide Home Loans, Inc., Third Party Defendant/Appellee.

No. 106,514.

Court of Civil Appeals of Oklahoma, Division No. 3.

May 21, 2010.

William H. Castor, Broken Arrow, OK, for Appellants.

James C. Hodges and Rebecca Wood Hunter, Tulsa, OK, for Appellees.

Grant A. Schwabe, Tulsa, OK, for Appellee/Third Party Defendant.

LARRY JOPLIN, Presiding Judge.

¶1 Appellants, Roy and Diana Reed, seek review of the trial court's decision quieting title to a disputed eight-foot strip of land in Appellees, Hector Hernandez and Tonya Goesch. Appellants also seek review of the trial court's attorney fee award under 12 O.S.2001 § 1141.5(A)(4), contending the trial court erred as a matter of fact and law.

¶2 Appellants and Appellees live in Tulsa, Oklahoma, where their respective lots back up to one another. Appellants have owned lot nine since 1974 and Appellees have owned lot fourteen since 2001. At the back of the property line for each house's lot, there exists a utility easement. The easement overlays the back of the property for a distance of five feet on both lots fourteen and nine, making a total easement width of approximately ten feet. An additional 3.4 feet beyond the easement into the Appellees' property (lot 14), there is a chainlink fence which serves to fence in and enclose the Appellees' yard. The chainlink fence cuts off the back 8.4 feet of Appellees' platted lot, leaving the back portion of lot fourteen that backs up to Appellants' lot nine cut off from the enclosed portion of Appellees' yard.

¶3 The disputed 8.4 foot strip of property rests within what may best be described as an alleyway. The back lot area of this block and the adjoining block were developed in such a way as to provide an alleyway of sorts running through and along the back of the properties. This "alley" runs roughly along with the easement area, where most yards seem to end prior to the end of the lot line, allowing access to the area behind the homes, corresponding essentially to the easement width. Various encroachments into the alleyway of Appellants/Appellees' block now make it largely impassable.

¶4 On June 29, 2006, Appellees' counsel sent a letter to Appellants asking that Appellants cease and desist further use of the unenclosed portion of Appellees' lot, situated on the east side of the chainlink fence. On August 18, 2006, Appellees followed up the June 29th letter with a letter to Appellants' counsel explaining Appellees had permitted Appellants' use of the property, but recent use by Appellants was unacceptable, Appellants' claims of entitlement by prescriptive use were unfounded and Appellees requested Appellants immediately sign an enclosed quit claim deed in order to remove any potential cloud on Appellees' title.

¶5 Appellees filed their initial petition to quiet title in the district court on August 21, 2006. Appellants denied Appellees' claims, claiming title themselves by adverse possession and boundary by acquiescence. The trial court conducted a trial on the parties' claims and ultimately quieted title to the disputed tract in Appellees. From this order Appellants bring this appeal.[1]

¶6 A quiet title action is an action of equitable cognizance. *Olsen v. Jones,* 1966 OK 48, 412 P.2d 162, 167. The appellate court must examine the trial court's decision quieting title in one of the parties to determine if the trial court's judgment is against the clear weight of the evidence. *Hinds v. Johnston,* 2009 OK CIV APP 54, 211 P.3d 236, 239.

¶7 The record reveals and the parties stipulated that record title to the disputed 8.4 foot strip of property lies with Appellees. Thus, Appellants' adverse possession claim requires that every element of possession be supported by clear, positive and con-

1. Appellants November 14, 2008 petition in error was filed prior to the trial court's March 27, 2009 order awarding Appellees' attorney fees. Appellants amended their petition in error on April 7, 2009 to include the attorney fee award order and the corresponding errors alleged with respect to that order.

vincing proof and every presumption lies in favor of the record owner of the land. *Francis v. Rogers*, 2001 OK 111, 40 P.3d 481, 486. Adverse possession claims are disfavored and not to be made by inference. *Id.* Adverse possession requires clear and positive proof of all its constituent elements, possession which has been 1) actual, 2) open, 3) notorious, 4) exclusive, and 5) hostile for the 6) full statutory prescriptive period of fifteen years. *Mason v. Evans*, 1965 OK 173, 410 P.2d 534, 540–41.

■ ¶ 8 Appellants presented their case primarily through the testimony of Appellant, Roy Reed. Reed testified the chainlink fence, which sits 8.4 feet into lot fourteen and divides his yard from Appellees, has been in its present location since 1974. Appellants assert they maintained the area on the east side of the chainlink fence, treating it as their yard, while the Appellees and previous owners of lot fourteen treated the area on the west side of the chainlink fence as the yard for lot fourteen. Reed cleared the disputed area, mowed, cleaned up the trees, and maintained a garden for several years. He also constructed a dog pen in the disputed area, which was dismantled and rebuilt on several occasions as needed. Appellants submitted photographs dating to the mid and late 1970's which illustrated the placement of the chainlink fence. Many of these photos showed how Appellants used the disputed area, several pictures showed playground equipment, Appellants' children playing and flower beds maintained around trees with the lawn neatly mowed.

¶ 9 Appellants assert Oklahoma law provides that adverse possession need not be for the period immediately preceding suit and title by adverse possession can ripen at any time prior to suit and still be sufficient to vest title. As a result, Appellants claim that due to the placement of the chainlink fence, they came to own the disputed area in March 1989, fifteen years after their ownership of lot nine commenced and twelve years before Appellees owned their property in 2001.

¶ 10 Appellees counter that Appellants did not exercise exclusive and hostile control of the disputed area. The disputed area was never fully enclosed or fenced by Appellants.

Appellees presented witnesses who described having access through the alleyway, throughout the time-frame Appellants claim to have exercised exclusive control of the disputed area. Appellee Goesch and various neighbors testified that access to the disputed area and through the alleyway between lots fourteen and nine was open and unobstructed until quite recently. Goesch testified she used the disputed area behind her own home in 2001 or 2002 to gain access to phone lines and make a repair. She walked the alleyway from the disputed area to the main thoroughfare at the south end of the block with a large ladder and did not encounter obstructions, nor did she see evidence of Appellants' exclusive control of the alley area between lots fourteen and nine.

¶ 11 Goesch also described an incident involving Appellant, Roy Reed, wherein he used bolt cutters to cut through a lock and chain on the gate of the chainlink fence. Reed then placed a new lock on the fence and gave a key to Goesch.

¶ 12 One neighbor who lived in the area for over thirty years walked her child to school in the mid to late 1970's, using the alleyway behind lots fourteen and nine. This same witness also described public service and city vehicles easily using the unobstructed area behind lots nine and fourteen.

¶ 13 Another witness testified that until recently, the alleyway for the block at issue was virtually identical to the still open alley on the adjoining block. There were no fences blocking one's ability to travel behind the properties. This witness indicated she was familiar with the open nature of the alleyway during the 1980's through the late 1990's. She said children biked through the area, played and often walked to school. The lot line area between lots nine and fourteen was open and accessible to neighbors and the like throughout Appellants' ownership.

¶ 14 Appellees also offered testimony that another neighbor, other than Appellants, maintained at least part of the disputed area during the time Appellants claim the property was under their exclusive control.

■ ¶ 15 Appellees point out that Appellants are not the record owners of this prop-

erty and have never paid taxes on the disputed strip of land. Instead, Appellees and their predecessors in title paid the taxes. While failure to pay taxes is not absolutely fatal to one's adverse possession claim, a failure to pay taxes weakens a claim of ownership. *Anderson v. Francis*, 1936 OK 312, 57 P.2d 619, 621.

¶ 16 The record supports Appellees' position that Appellants never completely enclosed the disputed tract. Throughout the 1970's, 1980's, 1990's and as late as 2001, Appellants' neighbors, including Appellees, traversed the disputed area. Appellants' use of the area seems to have changed throughout, sometimes there were dog pens in the disputed tract, sometimes flowerbeds or playground equipment, sometimes not. The fixtures Appellants built and erected in this area were not constant. As a result, the bulk of Appellants' claim of possession rests on their general upkeep and installation of the landscaping details, tending to the lawn, planting flowers and taking care of the trees, basically treating the back of lot fourteen as their property. Appellants do not point to any fixtures or more permanent attachments in support of their prescription claim.

¶ 17 The Oklahoma Supreme Court has held that landscaping, which involved leveling dirt, establishing a lawn and *erecting a fence*, could support a hostile and adverse possession claim. *Norman v. Smedley*, 1961 OK 143, 363 P.2d 839, 844. However, Appellants never effectively enclosed the disputed area in this case, as witnesses testified to navigating the unobstructed alley for the better part of the last forty years. This common access to the disputed tract, by Appellees, neighbors, children and city vehicles erodes Appellants' claims of hostile, exclusive and notorious possession of the disputed area.

¶ 18 Cutting the lock and then providing Appellee Goesch a key, effectively giving her unfettered access through her gate to the disputed tract, is problematic for Appellants' adverse possession claim as well. This accommodating behavior is not compatible with a hostile claim of right against Appellees. Appellants dismiss this incident, arguing they assumed ownership of the disputed tract in 1989 and therefore already owned it before bolt-cutting and opening the gate.

¶ 19 Ultimately, Appellants' 1989 ownership claim does not reconcile with their ever-changing ebb and flow of influence over this eight-foot strip, with fixtures that came and went and pieces of fence that never quite encircled the disputed property. In this case, open, notorious, exclusive and hostile possession was not supported by clear and positive proof. *Francis*, 40 P.3d at 486. "The moment the possession is broken it ceases to be effectual, because as soon as, and as often as, a break occurs the law restores the constructive possession of the owner." *Mason*, 410 P.2d at 541. It was Appellants' burden to satisfy each element of possession in support of their claim. *Mason*, 410 P.2d at 540. Appellants presented evidence they treated and thought of this area as their own yard. However, the boundaries were porous and Appellants' actions were at times ambiguous, clear and positive proof was lacking.

¶ 20 The record supports the trial court's decision which found Appellants never quite exercised exclusive control of the disputed area. Giving Appellee a key to the gate provided the trial court additional evidence that Appellants' possession was more tentative than adverse possession requires.

¶ 21 Appellants also claimed Appellees were precluded from claiming the chain-link fence was not the boundary line separating the properties, arguing they established the existence of the boundary fence in its present location since 1974 and were therefore entitled to the property by virtue of boundary by acquiescence.

In *Lewis v. Smith*, 1940 OK 276, 103 P.2d 512, the Supreme Court made the following observation:

It is well established that if adjoining landowners occupy their respective premises up to a certain line which they mutually recognize and acquiesce in for a long period of time ... usually the time prescribed by the statute of limitations ... they are precluded from claiming that the boundary line thus recognized and acquiesced in is not the true one.

*Eubanks v. Anderson,* 2008 OK CIV APP 13, 178 P.3d 872, 875–76 (citations in original).

¶ 22 In *Lewis,* the court concluded four factors were sufficient to establish title by acquiescence: "(1) the division of a unit of land; (2) the running of a fence between the divided portions of the unit deviating from the true line as established by government survey; (3) the continued maintenance of the fence for [the prescriptive period]; and (4) the use by the respective parties of the land lying on their respective sides of the fence only." *Lewis,* 103 P.2d at 514.

¶ 23 Appellants presented evidence they cared for the disputed tract as if it was their own. However, Appellees presented evidence of their own use of the disputed area and claimed Appellants' use was only by virtue of their permission and good graces. At the same time, there was evidence the disputed area was never enclosed by Appellants and a constant stream of access to the area was available throughout Appellants' ownership of lot nine. Therefore, Appellants needed to cobble together fifteen years of evidence that they and owners of lot fourteen acquiesced in the chainlink fence boundary for a consecutive fifteen year period. Based on the record available, Appellants failed to do this.

¶ 24 It is also worth noting that the gate in the chainlink fence indicates previous owners of lot fourteen had access to and perhaps maintained access to the disputed area, again complicating Appellants' required proof.

¶ 25 Prescriptive claims are disfavored. *Francis,* 40 P.3d at 486. This court cannot infer from the evidence available in this record that Appellants enjoyed an uninterrupted fifteen year reign over the east side of the chainlink fence. We find the trial court's judgment quieting title to this disputed strip of land in Appellees, the record owners of lot fourteen, is not against the clear weight of the evidence.[2]

■ ¶ 26 We must also examine the trial court's attorney fee award. Upon Appellees' application for attorney fees, the court awarded $10,000.00 in fees. Appellees argued their fees were awarded as a matter of course, pursuant to 12 O.S.2001 § 1141.5.[3]

¶ 27 Appellants' argument against the award of attorney fees has two distinct components. First, Appellants claim the Nonjudicial Marketable Title Procedures Act simply does not apply where the claim to land is based on adverse possession and attorneys fees cannot be awarded under § 1141.5 for such prescriptive claim cases. Second, if in the event the act does apply to adverse possession cases, Appellants assert the notice provided by Appellees in satisfaction of the strict notice requirements outlined in 12 O.S. 2001 § 1141.5 was insufficient.

¶ 28 Section 1141.3 provides:

A. Any person or any entity having an interest or claiming an interest with respect to any parcel of real property *who in good faith asserts that there is an instrument filed in the real property records* of the county in which the real property, or some portion of the real property, is located and who would otherwise be required to

---

2. Countrywide Home Loans, Inc. holds the mortgage on lot fourteen. Countrywide was a third-party defendant in the proceedings below and is an Appellee in this appeal. Because this court has found the trial court's decision quieting title in Appellees was not against the clear weight of the evidence, Appellants' argument that they acquired title to the disputed tract prior to the imposition of the Countrywide mortgage is moot.

3. 12 O.S.2001 § 1141.5(A)(4):
   A. If a requestor prepares a notice pursuant to Section 3 of this act, and:
   . . .
   4. The respondent receives the notice and refuses to take the action requested in the notice, then in the event that the requestor files an action to quiet title to the subject parcel pursuant

to Section 1141 of Title 12 of the Oklahoma Statutes, and the civil action results in a judgment for the plaintiff which could have been accomplished through the execution and delivery of a curative instrument or the taking of corrective action identified in a notice, the plaintiff in the quiet title action, in addition to any other requested relief, shall be entitled to recover damages equal to the actual expenses incurred by the plaintiff in identifying the relevant instrument, preparing the notice to the respondent pursuant to Section 3 of this act, and the expenses of litigation directly related to obtaining judgment quieting title in the plaintiff with respect to the interest or apparent interest forming the basis of the action against the respondent, including costs and reasonable attorney fees.

file a quiet title action with respect to the parcel pursuant to the provisions of Section 1141 of Title 12 of the Oklahoma Statutes, may use the procedures authorized by this act to attempt to remove a cloud or an apparent cloud on the title of the real property by requesting a respondent to prepare a curative instrument or to take corrective action.

12 O.S.2001 § 1141.3(A) (emphasis added). The statute clearly applies where there is an instrument filed that clouds or casts an "apparent cloud" on one's title to real property. The existence of the offending instrument is the key to application of § 1141.3 and the corresponding attorney fees that are available under § 1141.5.

¶29 Appellees' notice did not include references to an offending instrument, because such an instrument did not exist in this case. Appellees claim *Head v. McCracken*, 2004 OK 84, 102 P.3d 670 and *Stump v. Cheek*, 2007 OK 97, 179 P.3d 606 support their proposition that fees can be sought under §§ 1141.3 and 1141.5 for adverse possession claims. However, neither *Head* nor *Stump* stand for the proposition that § 1141.5 attorney fees can be awarded in adverse possession cases. *Head* dealt with a title defect created by an easement against a servient estate. An award of attorney fees was denied in large part, because the easement which the court ultimately granted was significantly narrower than the one the dominant estate holder had requested in his notice. In *Stump*, the court held that a prevailing party could recover attorney fees for correcting a cloud on title where the underlying quiet title action arose from a judgment.

¶30 Exceptions to the American Rule are narrowly defined. *Stump*, 179 P.3d at 612–13. "For an award of attorney fees to be authorized under a particular statute, the authorization must be found within the strict confines of the statute." *Id.* at 613. This court must read the statute providing for attorney fees narrowly and a suit to determine the validity of an adverse possession claim is not contemplated within the attorney fee provisions outlined in § 1141.5. The trial court's attorney fee award is reversed.

¶31 For the reasons herein provided the judgment of the trial court is AFFIRMED with respect to the trial court's judgment quieting title to the disputed property in Appellees and REVERSED with respect to the trial court's attorney fee award.

BELL, V.C.J., and MITCHELL, J., concur.