## ROCHER v. WILLIAMS et al.

No. 28220.  May 31, 1938.

Rehearing Denied. June 28, 1938.

W. T. Jeter, for plaintiff in error.

Hollis Arnett, for defendants in error.

GIBSON, J.  This is an action to quiet title to a half section of land in Greer county described as the west half of section 17, township 5 north, range 21 W. I. M., and to establish the north boundary line thereof as against the adjacent owner. The parties will be referred to as they appeared at the trial.

In the year 1912 the defendant Thomas J. Williams conveyed the premises as above described by deed to the plaintiff, who immediately went into possession. Williams owned another tract adjoining the half section on the north. According to the allegations of the petition, a wire fence, by agreement of the parties at the time, marked the boundary line between the two tracts, and plaintiff has continuously occupied and claimed the land south of said fence for a period of 25 years by agreement and acquiescence of the defendants. It is charged that the defendants are now asserting title to a strip of land belonging to plaintiff south of the boundary as located and agreed upon, thus clouding plaintiff's title thereto.

Defendants admit plaintiff's continuous possession as alleged, and admit further that "at the time said defendant Thomas J. Williams sold said lands to John Rocher that there was then a line or division fence between the two farms. That said defendant did point out said fence as the line between the two farms." They further admit "that the old fence was always recognized as the division line by all parties for a period of more than 25 years." It is alleged, however, that plaintiff has recently moved the original fence to a point about 19 feet north of its original location on the west end, and about 30 feet north of its original location on the east end.

In their cross-petition defendants set up an alleged official survey had prior to commencement of the action whereby the disputed line was ascertained and established according to statute (secs. 7796-7800, O. S. 1931, 19 Okla. St. Ann. secs. 582-586). They allege that this survey has become final and binding upon the parties; that the line so established is south of the present fence, and ask that plaintiff be ejected from the portion north of said line. In the alternative, however, they ask that they be restored to the land lying north of the location of the original fence.

In his reply plaintiff challenges the legality of the aforesaid survey, and alleges that the surveyor removed and changed the location of certain official government monuments marking the corner or corners of the premises.

The issues as made up by the pleadings in this case involved nothing other than the question of the location of the line fence as it stood in 1912 when plaintiff received his deed, and the issues of law and fact relating to the survey made by the county surveyor. Either the original line fence became and now remains the boundary, or the official survey, if legally made, re-established the line as fixed by the government survey and which at all times since the original survey has remained the only legal boundary line. If, as a matter of law, the original fence constituted the boundary line, the trial court was confronted with merely an issue of fact as to the location thereof; if the line as fixed by the county surveyor controlled, then the court was confronted with only the duty of determining the legality of the surveyor's proceedings, and to render judgment accordingly. This, of course, is aside from the question of the right to jury trial, which will be later referred to.

The trial court held that the survey, if legally conducted, was controlling, and that the original fence and the agreement of the parties with respect thereto were matters wholly immaterial to a determination of the controversy. Upon this assumption the court, over plaintiff's objection, discharged the jury, and thereafter proceeded to hear and determine the matter of the legality of the survey. It was held that the surveyor's proceedings were regular in every respect, had become final by failure to appeal therefrom (secs. 7798-7800, supra), and the parties bound thereby. Judgment was rendered accordingly, and plaintiff appeals.

Plaintiff says that, since the location of the line fence of 1912 was in dispute, the court erred in discharging the jury and forcing trial to the court.

So far as plaintiff is concerned, the discharge of the jury was not in itself error. The action was one in equity to establish a boundary line (Reynolds v. Wall, 181 Okla. 110, 72 P.2d 505), and to quiet title in the one in possession, which is also of equitable cognizance and not an action of the character wherein plaintiff is entitled to a jury. Walden v. Potts, 97 Okla. 24, 222 P. 549. Plaintiff's action is not one for the recovery of money or of specific real or personal property entitling him to jury trial as a matter of right. Section 350, O. S. 1931, 12 Okla. St. Ann. sec. 556.

The most important matter for consideration on this appeal is the trial court's refusal to consider the action of the parties with reference to establishing the boundary line, and its refusal to hear the evidence of the plaintiff offered upon the question.

The simple facts, as admitted by the pleadings in this case, are as follows:

The owner of two adjoining tracts conveyed one of the same by deed, describing it according to government survey. The boundary lines thereof as fixed by said survey were not identified by monuments of any kind sufficiently to mark their exact location. At the time of the conveyance the grantor "pointed out" to his grantee a certain fence as the common boundary between the tracts, which fence may or may not have been upon the line fixed by said survey. The grantee immediately went into possession of the land purchased, including all land up to the aforesaid fence, and has retained uninterrupted possession for 25 years.

We are to say whether, under the foregoing facts, the grantee, plaintiff herein, acquired title to all the land up to the location of said fence. That is to say, notwithstanding the line fixed by the government survey, did the location of the original fence, the one pointed out by the defendants, ever become the boundary line between the two tracts? If that fence did become the boundary, the trial court erred in refusing to hear plaintiff's offered testimony, and erred in considering the survey as made by the county surveyor, since that officer was attempting to discover a line other than the real boundary.

Defendants say, however, that the fence was thought by all parties to be on the true boundary line as established by the govern-

ment survey; that if it was not on that line, the agreement, if any, and continued occupation and acquiescence were the result of mutual mistake, and in such case they were not bound by the agreement or estopped by acquiescence.

Where, as in this case, the exact location of a common boundary line is unknown to the owners of the adjacent tracts, they may orally agree upon a boundary and, where the agreement is followed by acquiescence and possession, the parties are concluded by such agreement, although the line agreed upon was not the true boundary (9 C. J. 236, sec. 182); and such contracts are not within the statute of frauds. Patterson v. Meyer, 28 Okla. 304, 114 P. 256. But where the intent of the parties was to establish the true boundary, and it develops that they were mistaken, the agreement does not conclude the parties, and either may set it aside (Reynolds v. Wall, 181 Okla. 110, 72 P 2d 505), unless equitable reasons have intervened requiring adherence to the line agreed upon (9 C. J. 237, 238, sec. 184; Midland Valley R. Co. v. Imler, 130 Okla. 79, 262 P. 1067), or unless the acquiescence and occupancy have continued throughout the statutory period applying to the acquisition of title by prescription. 9 C. J. 237, 238, 245, secs. 184, 197. The rule obtaining in most jurisdictions and applied apparently in all cases irrespective of the question of mutual mistake, is stated in Kandlik v. Hudek, 365 Ill. 292, as follows:

"The adoption of a division line between the owners of adjoining lands may be implied from their acts and declarations and by acquiescence is respect thereto. After the recognition of such division line as the true boundary for the statutory period of limitation, * * * the parties and their privies are estopped from asserting that it is not the true line."

That rule fully applies to the situation here, and we adopt it as the law applicable to this case. Here there was complete acquiescence in the line as pointed out for a period of 25 years, and uninterrupted occupancy throughout that period. Whether that boundary was the true one or not has now become immaterial, since the 15-year statute has run, and precludes action to establish the true line, or that fixed by the original survey. The trial court should have allowed plaintiff to offer his evidence to establish the location of the line that had been continuously recognized as the true boundary.

Assuming, but not deciding, that the act of the defendants in pointing out the fence as the true boundary and the acceptance thereof by plaintiff constituted a mutual mistake and binding upon neither party (9 C. J. 241, sec. 189; Reynolds v. Wall, supra), and assuming that such circumstances did not constitute an executed contract upon taking of possession, said acts did, nevertheless, constitute a so-called practical location actively assented to and participated in by defendants from the very start.

It may be true that the statute of limitations is not placed in operation against one who, through mistake as to the true boundary, has passively and silently acquiesced in a line marked by his neighbor until he has knowledge, actual or imputed, of the encroachment (Connell v. Clifford, 39 Colo. 121, 88 P. 850). But, as to one who actively participates and openly assents to the establishment of a boundary, the statute is thereupon placed in operation. He has made a contract, implied if not express, voidable at most, for mutual mistake. If he is to rescind and recover possession, he must do so within the period, the courts hold, for the recovery of land held adversely. This rule is supported by reason and justice, and our attention is called to no decision to the contrary.

The judgment is reversed and the cause remanded, with directions to grant plaintiff a new trial.

BAYLESS, V. C. J., and PHELPS, CORN, and HURST, JJ., concur.