PIQUET v. PIQUET et al.

No. 32052. Jan. 29, 1946.

*165 P. 2d 622.*

Ernest R. Brown, of Pryor, for plaintiff in error.

H. Tom Kight and H. Tom Kight, Jr., both of Claremore, for defendants in error.

ARNOLD, J. On March 30, 1942, Mary B. Piquet filed her petition in the district court of Rogers county against Clarence Piquet, Eldon McMillan, Alvin McMillan, W. E. McMillan and Mrs. W. E. McMillan to quiet title to a strip of ground 21 feet wide along the east boundary line of the N.E.¼ of the N.W.¼ of section 36, township 30 north, range 15 east, in Rogers county, Okla., and for damages for the wrongful occupation thereof by the McMillans since 1938.

Mary B. Piquet and Clarence Piquet were husband and wife and purchased the 40 acres above described in 1920, since which time until 1938 they had possession and occupancy thereof. In 1938 they were divorced and in the property settlement Clarence Piquet conveyed to her this 40-acre tract. There had never been any dispute as to the east boundary line of this tract of land until after the divorce action. Thereafter Mary B. Piquet had the land surveyed, and based upon the report of this surveyor she made claim to a 21-foot strip east of an old fence which had been recognized as the east boundary of this 40 acres ever since she and her husband acquired title thereto. The McMillans for several years owned the W.½ of the N.E.¼ of section 36, township 20 north, range 15 east, adjoining plaintiff's 40 acres on the west.

On the trial of the case one Baker testified that he allotted the land now owned by the McMillans for his daughter and that patent thereto was issued in her name; that soon after the allotment was made, and about 1916, he built a fence along the east boundary line of the 80 acres allotted to his daughter basing the line on the half section markers used by the government survey; that this fence is still located on the line where he originally constructed it. Bill McNabb testified that he was road supervisor in that district until 17 years ago, beginning some time in the 1890's, and that he was familiar with the line fence between these two properties and that the same had existed for many years without change. Clarence Piquet testified to his purchase of the 40 acres in 1920 and that he and his wife were in possession and cultivating the same for a number of years prior to their actual occupancy thereof, but that during all of the time since their purchase of the property in 1920 the

old fence along the eastern boundary of the 40-acre tract was recognized by them as being the east boundary line between them and the 80 acres owned by McMillan. W. E. McMillan testified that he bought the 80 acres now owned by him in 1925; that he subsequently surrendered it to an insurance company in satisfaction of a mortgage which they held, and that later he repurchased the same; that from the time he originally purchased the 80 acres in 1925 up to the present time he has been in the actual possession thereof either as owner or as a tenant, and that the fence between the two properties is on the original line on which it was built and has not been changed since he became owner of the 80 acres; that he has always recognized this old fence as being the east boundary line of his property.

The plaintiff, Mary B. Piquet, testified that this old line fence had been changed and that the survey which she had made showed that it was 21 feet east of the quarter section line and, therefore, included 21 feet of land to which she had title and was entitled to possession; she testified to listing her 40 acres for taxation and of paying the taxes thereon regularly, and to many other details concerning the disputed boundary line, but none of her testimony nor any other evidence in her behalf contradicted the material facts testified to by numerous witnesses for defendants as to the original construction of the division fence and to its long continued existence on the line on which it was originally built and to the recognition of all parties concerned of this old line fence as being the boundary line between the two tracts.

This court has had occasion frequently to pass upon boundary disputes similar to the one here involved and the law relating thereto is fairly well settled. In the case of Lewis v. Smith, 187 Okla. 404, 103 P. 2d 512, in the second paragraph of the syllabus, this court said:

"Where adjoining landowners occupied their respective premises up to a certain fence line which they mutu-ally recognize and acquiesce in for a long period of time, usually the time prescribed by the statute of limitations, they are precluded from claiming that the boundary line thus recognized and acquiesced in is not the true one."

Following that decision, and reaffirming the doctrine therein stated, this court in the case of Lamm, Ex'r, v. Hardigree, 188 Okla. 378, 109 P. 2d 225, states the law in the syllabus as follows:

."Where the owner of a quarter section of land as surveyed by the government has occupied the same exclusively for more than 25 years, claiming and so occupying as a part thereof all land to a certain enclosure and line clearly defined for the same period, and an adjoining landowner goes upon such occupied land, claiming ownership of a part thereof solely upon the showing of a recent survey disclosing that the old line marked by the enclosure did not exactly coincide with the government survey line, the first claimant, in a proper action, is generally entitled to judgment determining his boundary line as established by the enclosure and for injunctive relief, in the absence of any further showing by the evidence, negativing acquiescence in the adopted boundary line."

Though no instruction was requested by either party and no exception saved by either to any instruction given, plaintiff insists that prejudice resulted to her by the giving of instruction No. 3½ by the court on its own motion to the jury after its retirement to consider the case because the giving of said instruction had the effect of overemphasizing the statute of limitation.

By instruction No. 3 the court told the jury that if it found that the McMillans had occupied and used the strip of land in question up to the fence line for 15 years or more, its verdict should be for the defendants. Instruction No. 3½ is the converse of instruction No. 3. By it the court told the jury that unless it found that the defendants had possessed and occupied said strip of ground for 15 years or more, it should find for the plaintiff. As hereinbefore indicated, we have held that such occupancy, for a period of 15 years or more, precludes

such a contention as made by the plaintiff herein. Though the instruction may have been more favorable to the plaintiff than that to which she was entitled, we cannot see how the reiteration of the absolute requirement of proof of 15 years' occupancy could or did prejudice her.

Upon the facts disclosed by this record and upon the authority of the cases above cited and quoted from, we are of the opinion that the judgment of the trial court should be and is affirmed.

GIBSON, C. J., HURST, V. C. J., and RILEY, WELCH, and DAVISON, JJ., concur.