### KINKADE et al. v. SIMPSON.

No. 32805. Sept. 21, 1948.

*197 P. 2d 968.*

Elam, Crowley & Musser, of Enid, for plaintiffs in error.

M. F. Priebe, of Enid, for defendant in error.

LUTTRELL, J. This is an action brought by Ora A. Simpson, as plaintiff, against defendants, A. L. Kinkade and Ruth Kinkade, to recover possession of small strip of land, being part of the north ten feet of lot 9, block 1, Parkview addition to the city of Enid, and to quiet title thereto. The case involves a dispute over the boundary line between lot 9 and lot 8, which adjoins lot 9 on the north. Plaintiff claims to be the owner of an interest in all of

lot 9 and entitled to possession thereof, and defendants asserted title to the small strip involved by prescription or by acquiescence on the part of the owners of lot 9. Other parties were made parties defendant, but the only question on this appeal is between plaintiff and the named defendants. The trial court submitted the case to a jury, and from an adverse verdict and judgment thereon defendants appeal.

Essential facts are not in dispute. From the uncontradicted evidence it appears that one Hardgrave, the father of plaintiff, was the owner of both lots 8 and 9; that in 1930 he deeded to plaintiff the south 40 feet of lot 9, and about the same time erected a residence for himself upon lot 8, in which he resided until he lost the title to lot 8 by mortgage foreclosure in 1932. Thereafter he made his residence at the home of plaintiff. It appears that up to the time of the mortgage foreclosure and loss of title to lot 8 by Hardgrave there had been no division fence between the two lots, and both Hardgrave and plaintiff and her husband had used the north ten feet of lot 9 for their own purposes. It further appears that after Hardgrave lost the title, and other parties moved into the house on lot 8, plaintiff gave said parties permission to build a fence along a portion of the north side of the north ten feet of lot 9, which fence extended eastwardly from the rear end of the lot, being the west end, some 60, or 65 feet. At that time the exact location of the line between lots 8 and 9 was not definitely known or established by plaintiff or by the occupants of lot 8, and apparently they all assumed that the fence was constructed about where the division line between the lots was located. This fence was constructed in 1933. Defendants acquired title to lot 8 in 1938, and continued to use the narrow strip of lot 9, which was north of the fence above mentioned. Hardgrave died in 1940, leaving plaintiff and others as his sole heirs, and thereafter plaintiff had the line between the two lots surveyed; ascertained that the fence was not located exactly on the division line, but was slightly south of that line, and requested defendants to move the fence to the line. Defendants refused to do so, whereupon plaintiff brought this action.

Defendants contend that the trial court erred in permitting the husband of plaintiff to testify as to the permission given the original erectors of the fence to place it where they did. If the court erred in this respect we consider the error harmless, for the reason that plaintiff testified without objection that the parties who desired to build the fence talked to her about the placing of the fence at its location, and that she gave them permission. On cross-examination, when asked by defendants' attorney about this transaction, she testified as follows:

"They came and asked me about it and I told them — I asked them what they wanted to do and they said they wanted to put some chickens in there or something and they said they would tear the fence down when they moved and they didn't do it."

Defendants also complain of the instructions given by the trial court, contending that they confused title by acquiescence in a boundary line, and title by prescription and adverse possession.

We consider it unnecessary to discuss the questions urged by defendants at length for the reason that under the undisputed facts as set out above, plaintiff was entitled to recover on any theory.

There is no evidence in the record that prior to the building of the fence in 1933, Hardgrave, the then owner of both lots, had ever made any effort to divide them, or establish the boundary between them, and under the testimony of plaintiff as set out above, it clearly appears that the fence was not erected as a boundary fence, but simply for the purpose of enabling the builders of the fence to serve their own pur-

poses, and with an apparent understanding on their part that the fence might be on lot 9. Had they been sure that the fence was on lot 8 plaintiff's permission to erect it would have been unnecessary.

The facts are not sufficient to establish title by prescription as defined by 60 O.S. 1941 §333, since such title is based upon adverse possession for the statutory period of 15 years. In the instant case there is no showing that any owner of lot 8 held possession of the disputed strip adversely prior to the acquisition of the property by defendants in 1938.

Nor was there the establishing of a boundary by acquiescence, since in such case also, under all the authorities, possession must continue for the statutory length of time. See 11 C.J.S. p. 653, §80; 8 Am. Jur. p. 802, §80. These authorities announce the general rule, and this court has followed that rule in Lewis v. Smith, 187 Okla. 404, 103 P. 2d 512. In that case we said:

"Where adjoining landowners occupy their respective premises up to a certain fence line which they mutually recognize and acquiesce in for a long period of time, usually the time prescribed by the statute of limitations, they are precluded from claiming that the boundary line thus recognized and acquiesced in is not the true one."

And in the same case we quoted with approval from the Supreme Court of Iowa [Dake v. Ward, 168 Iowa, 18, 150 N. W. 50.] as follows:

" . . . 'The very reason for requiring a long period of acquiescence in order to establish it at all is that it is deemed somewhat negative in character, and that its inference can be drawn more fairly from a long period of negation than a short one. It is readily conceivable that a person may be dissatisfied, and yet submit and thus acquisce.' It is sufficient to say that the cases with respect to the period of time during which acquiescence continues sufficient to establish the boundary all agree that it is sufficient if it equals the statute of limitations applicable to title by prescription."

The trial court instructed the jury that whether there was a claim of title by acquiescence, prescription, or adverse possession, the possession of the party claiming such title must continue for the statutory period of 15 years in order to vest title in defendants. This was a correct statement of the law.

Defendants assert that plaintiff is estopped to deny the title of defendants for the reason that after the occupancy of the property defendants mowed the lawn, including the strip in controversy, and set out grass, and kept shrubbery trimmed, etc. There is no evidence showing any act done, or statement made, by plaintiff, which could mislead the defendants, or lead them to believe that she considered or agreed that the fence was the boundary line between the lots. Her mere failure to object to the fence did not operate as an estoppel. See 8 Am. Jur. p. 805, §63.

Defendants also contend that the evidence fails to show the correct division line between lots 8 and 9. The city engineer, a civil engineer and surveyor of some 35 years' experience, testified that he made the survey introduced in evidence by plaintiff, and that while original starting points of the survey from which Parkview addition was platted had been obliterated or destroyed so that they could not be definitely located, he used a recognized starting point which had been used and relied upon as a correct point for some 20 years, and which, in his opinion, enabled him to make a correct survey of the lots. While he admitted that the original marker or a point of beginning had been covered by paving or obliterated, he testified that the starting point used by him was, in his judgment, the location of a former recognized marker, and was generally accepted as such. There was no evidence that his survey was incorrect, but defendants placed on the stand the county surveyor, who testified as an expert, and stated that it was necessary to establish some definite point of beginning in order to make a cor-

rect survey of the lots. He further testified that he did little surveying in the city, and when he did he always checked with the city engineer on points established by him, and that he used and followed them in making surveys.

We are of opinion that the testimony of the city engineer was sufficient to prima facie establish the division line between the two lots, and in the absence of any showing that his survey was incorrect his testimony was sufficient to sustain the verdict of the jury.

Affirmed.

HURST, C.J., and RILEY, BAYLESS, CORN, GIBSON, and ARNOLD, JJ., concur.