Thomas BUCKNER and Geneva Buckner,
Plaintiffs in Error,

v.

Ernest O. RUSSELL, Defendant in Error.

No. 38169.

Supreme Court of Oklahoma.

Oct. 14, 1958.

Rehearing Denied Nov. 5, 1958.

**402**

Robert J. Bell, Charles B. Tucker, Mc-Alester, for plaintiffs in error.

Arnote, Arnote & Bratton, by Walter J. Arnote, McAlester, for defendant in error.

HALLEY, Justice:

This is an action by Ernest O. Russell against Thomas Buckner and wife; seeking a permanent injunction restraining defendants from trespassing upon adjoining land, removing fences, building new fences thereon and attempting to appropriate plaintiff's land to their own use. We shall refer to the parties as they appeared in the trial court. The trial court rendered judgment for the plaintiff and the defendants have appealed.

This controversy arose from the following facts. Defendants acquired title in 1955 to Lots 3 and 4 and the southwest of the northwest quarter of Section 1, Township 3 N, Range 13 E in Pittsburg County. This was about two years before this action was filed by plaintiff. The plaintiff owns the adjoining land south and east of defendants' land, except Lot 2 which joins defendants' Lot 3 on the east.

Plaintiff alleged that at the time he purchased his land in 1944, and for many years prior thereto, there was a fence along the established and recognized line completely surrounding and enclosing his land; that since defendants purchased their adjoining land in 1955, they have engaged in moving back the long existing, established and recognized fence lines onto his land, and are trespassing thereon, and have placed a corner post thereon and are threatening to build a new fence some distance from the established fence line upon the north and west sides of plaintiff's land, which will deprive plaintiff of the use of portions of his land which he and his predecessors in title have held and used for more than fifteen years, and that the existing fence has been recognized and acquiesced in by plaintiff and his predecessors in title and defendants and their predecessors in title for a period of more than fifteen years.

Defendants answered and alleged that the plaintiff was hindering them in fencing their land along the correct dividing lines as established by the official survey by the County Surveyor of Pittsburg County, and prayed that their title be quieted along the correct lines thus established, and that plaintiff be restrained from interfering with their ownership and control of their property, including the fencing thereof.

Defendants submit the following assignment of error:

"That the judgment is not sustained by sufficient evidence and is contrary to law and judgment on the evidence should have been rendered on behalf of the defendants."

The plaintiff relies upon Section 93, 12 O.S.1951, in claiming title by prescription, and the principal factual issue depends up-

on the evidence as to the possession and occupancy of the plaintiff and his predecessors in title of the land up to the fences between the land of the plaintiff and defendants, and especially whether there has been a continuous recognition and acquiescence in such fences for at least fifteen years prior to the institution of this action. The land in dispute consists of only about two acres and defendants claim that these strips of their land are included wrongfully within the old fences which plaintiff claims have been recognized as the true dividing lines, and are such in fact.

We have examined the entire record and weighed the evidence with a view of determining whether the findings and judgment of the trial court is against the clear weight of the evidence. This being a case of equitable cognizance, it is well established that unless the judgment of the trial court is found to be against the clear weight of the evidence it should be affirmed.

Many decisions of this Court have established the rule that where there is privity between successive occupants of real property, holding adversely to the true title continuously, the successive periods of occupancy may be united or tacked to make up the time of adverse holding prescribed by statute, as against the true title. Ellis v. Williams, Okl., 297 P.2d 916. This rule is also clearly set out in City National Bank of Duncan v. Soderberg, 171 Okl. 369, 43 P.2d 495, at page 498, as follows:

"* * * It is fundamental law that the possession of real property carries with it the presumption of ownership, and it is the duty of those purchasing such property from others than those in possession to ascertain the extent of their claims, and the open, actual possession of such property gives notice to the world of such interest as the purchaser actually has therein. Shaffer v. Turner, 43 Okl. 744, 144 P. 366; Adams v. White, 40 Okl. 535, 139 P. 514; Hass v. Gregg, 52 Okl. 51, 152 P. 1126; Wilkinson v. Stone, 82 Okl. 296, 200 P. 196; McCormick v. Stonebraker, 133 Okl. 34, 270 P. 1098."

We note that the plaintiff testified that he had been familiar with the lands involved and the fences separating his land from that of the defendants for a period of 33 years; that the dividing fence has been in the same place for all these years and recognized and acquiesced in by the owners on each side of the fence as the true dividing line; that the only change made in the location of the fence was the moving of a corner post a few feet to avoid a washout because located in a small draw; that he had walked the fence line often; that the County Surveyor made three different surveys which varied widely as to the fence line; that he did not agree to pay for any survey nor abide by any of them; that no owner had ever questioned the fence lines until defendants had acquired the land.

Seven other witnesses who had been familiar with the land involved for from 20 to 43 years testified for plaintiff. All testified that the present fence lines are in the same place they have occupied for all the years they had known the land. Until the present controversy arose they had never heard the owners complain or question the fence lines, or deny that they were the correct dividing lines between the lands of plaintiff and the defendants.

A number of plaintiff's witnesses had leased some of the land involved, cultivated it right up to the fence, hunted upon it and picked berries thereon. No witness knew who located the fence lines originally; some had helped repair the fences, put in new posts, and fastened the wires to trees in timbered areas. The witness T. O. Trammell testified he had known the land for 26 years and was asked on cross-examination:

"Q. That fence there has varied through the years, hasn't it? A. Well now I couldn't say, just like I told

you, it's just like it was when I moved there.

"Q. Well while you were there it varied, didn't it? A. No, nothing only a post hole one way or the other.

"Q. All right, when the post would be put up, you wouldn't put it back in that same hole that it had been pushed out of, would you? A. Well if you couldn't do that, maybe you would put it that far over that way, or that far over that way.

"Q. Yes and sometimes it would be a foot or two? A. No it never go that far."

Ray DeLaMater, one of the former owners, testified that during the 33 years he had known the land there had been no controversy as to boundaries and the fence had been recognized as the dividing line until some two years after defendants had bought their land in 1955, and that while he owned the land, he claimed up to the fence line.

Defendants' witnesses were mostly those who had examined the land and fences only a short time before the trial. There is no positive proof that the fence had been moved materially in repairing it. The County Surveyor, James C. Ward, introduced his survey in evidence and thought the true line was that fixed by his survey. He admitted that in the area of this land there are numerous errors in government surveys. The defendant, Thomas Buckner, testified he bought his land from De-LaMater and McVey, but never did look at the fences south of and in Section 1, but that over two years after buying the land he had it surveyed; that he knew nothing about the fence line when he bought the land; that he told plaintiff he wanted to have the land surveyed for he intended to build new fences. He did not testify that the plaintiff agreed to abide by any new lines found by the surveyor.

Our attention is called to the contention of the defendants that "acquiescence necessitates a knowledge of the true line." In support of this contention defendants cite the case of White v. Saling, 185 Okl. 46, 89 P.2d 754 and Reynolds v. Wall, 181 Okl. 110, 72 P.2d 505, 113 A.L.R. 417. These cases have been overruled. In Johnson v. Whelan, 186 Okl. 511, 98 P.2d 1103, at page 1108, it is said:

"We may rule out of consideration at once the decisions in Reynolds v. Wall, supra, and Rocher v. Williams, supra [183 Okl. 221, 80 P.2d 649], as well as the earlier case between these parties because they involve agreements between the parties over boundaries that are in dispute or are uncertain. All of the authorities treat this issue as being entirely different to the one before us. It is true that in Reynolds v. Wall, supra, and Rocher v. Williams, supra, the court mentions the old rule with respect to locating a boundary by encroachment by mistake, but that issue was not before the court. The party upon whose property the encroachment occurred had entered into an agreement respecting the line and the actual location of the building.

"The case of White v. Saling, supra, involved an issue similar to ours: An adjoining owner located a boundary by erecting his fence and garage on the property of another, thereby enclosing and using property not actually his. The syllabus lays down the rule positively that such an intrusion can never ripen into title by prescription, and uses as its authority the decision in Reynolds v. Wall, supra, and yet concludes by recognizing that such occupancy or use for the statutory time gives prescriptive right. The decision is confusing and is contrary to the prevailing modern rule and should be, and is overruled."

Also in Lewis v. Smith, 187 Okl. 404, 103 P.2d 512, it was recited that White v. Saling and Reynolds v. Wall, supra, had been expressly overruled in Johnson v. Whelan, supra.

It should be kept in mind that neither the plaintiff nor the defendants had any-

thing to do with the erection of the fences dividing their land. No witness testified as to when or by whom the fences were erected.

The evidence is very positive that the fences in question have been recognized and acquiesced in by the owners and occupants as the true dividing lines for over fifteen years prior to the filing of this action. The judgment of the trial court is not clearly against the weight of the evidence but is amply supported by the evidence, and is therefore affirmed.

DAVISON, JOHNSON, WILLIAMS, BLACKBIRD, JACKSON and CARLILE, JJ., concur.