2012 OK CIV APP 48

**Vaylen and Lori MCGLOTH-LIN, Husband and Wife, Plaintiffs/Appellees,**

v.

**Ruby LIVINGSTON, John Livingston, and Dawn Livingston, Defendants/Appellants.**

**No. 107,144.**

Court of Civil Appeals of Oklahoma, Division No. 4.

Nov. 9, 2011.

Certiorari Denied April 16, 2012.

---

K. Ellis Ritchie, David F. DuVall, K. Ellis Ritchie, P.C., Pryor, Oklahoma, for Appellants.

Tommy R. Dyer, Jr., DAVIS & THOMPSON, Jay, Oklahoma, for Appellees.

JERRY L. GOODMAN, Presiding Judge.

¶ 1 Defendants Ruby, John, and Dawn Livingston (Collectively, West Landowners), appeal the trial court's April 30, 2009, order which granted prescriptive title to property taken from them and granted to Plaintiffs Vaylen and Lori McGlothlin (East Landowners) when the trial court moved the true boundary line between their respective properties by holding that a fence of unknown origin and purpose had become the boundary between the properties. Based on our review of the facts and applicable law, we reverse the trial court's order.

## FACTS

¶ 2 East Landowners and West Landowners own adjoining properties divided by a north-south boundary line. East Landowners' son shot West Landowners' dog. As a result, criminal charges were filed against the son. After these events, East Landowners wrote a letter to West Landowners telling them to stop using the north-south roadway between the parties' adjoining properties, roughly paralleling the boundary line, apparently believing the roadway was wholly on their property.[1] West Landowners had obtained a survey in 1992 to reconfirm the legal boundary between the adjoining properties, as described in their respective deeds. The survey showed that the entrance to the roadway was on West Landowners' property. Relying on the survey, West Landowners parked a truck across the entrance to block East Landowners' use of it.

¶ 3 East Landowners then obtained a temporary injunction keeping the road open, claiming the fence on the western side of the roadway was in fact the true boundary line between the properties and further requesting the court quiet title in them to that portion of the land on East Landowners' side of the fence. The fence is not on the surveyed boundary line. It runs across the adjoining properties in a northwest-to-southeast direction. According to the survey, the northwest portion of the fence is on West Landowners' property and the southeast portion is on East Landowners' property. This fence has been in place at least since the 1940s and its origin and purpose is unknown. Previous adjoining landowners have worked on and maintained the fence during their ownership of the respective properties.

¶ 4 A section line road runs east-west on the northern boundary of both properties. An "old trail" provided access from the section line road to the parties' adjoining properties and to several properties adjoining East Landowners on the south. The subject fence was originally on the west side of the "old trail" and ran somewhat parallel to it.

¶ 5 In 1981, East Landowners stopped the owner of the property adjoining theirs on the South from using the "old trail" to gain access to his property. This owner, together with other owners of property next to East Landowners' southern boundary (Southern Landowners) filed suit against East Landowners to condemn a way of necessity across East Landowners' property because theirs was landlocked.

¶ 6 This suit was settled among the parties by East Landowners' predecessor in title granting to the landlocked South Landowners a thirty-three foot right of way across the west side of East Landowners' property. In consideration for the grant, South landowners agreed to improve the existing road and enclose East Landowners' property with a fence. South Landowners, believing the existing fence marked East Landowners' western boundary, improved the road on the east side of and substantially parallel to the existing fence and essentially over the "old trail." As part of the agreement, they then built a new fence along the east side of the new road for access to their respective homes.

---

1. The road is used by both East and West Landowners, and other property owners to the south

and along the south boundary of East Landowners' property in order to enclose the road.

¶ 7 As previously stated, West Landowners had their property surveyed in 1992 to determine the true record title boundary line of their property.[2] According to the survey, the north entry point from the section line road and a portion of the new road is on West Landowners' property; the road then runs southeasterly intersecting the surveyed boundary line deep into East Landowner's property, then continues to the south and southeast.

### McGlothlin I

¶ 8 This is the second time this case has been before us. We will refer to the previous appeal as *McGlothlin I* (Appeal, No. 104,126, *McGlothlin v. Livingston* ) and this appeal as *McGlothlin II.*

¶ 9 East Landowners sued West Landowners, claiming the existing fence line had become the true boundary line. West Landowners disagreed, contending the true boundary line was that revealed in the descriptions contained in the deeds and confirmed by the survey. Of critical importance is the fact that neither party disputed the boundary line described in the deeds or survey. Rather, East Landowners seek to move that boundary to match the existing fence line, while West Landowners seek to maintain the legally described boundary intact. East Landowners were granted summary judgment determining the fence to be the boundary, by acquiescence of the parties, and prescriptive title was given to East Landowners to those portions of West Landowners' property lying beyond the surveyed boundary. West Landowners appealed in *McGlothlin I.*

¶ 10 In *McGlothlin I,* which is now the law of the case, this Court held the fence did not create a boundary by acquiescence because there was no evidence yet produced to prove that the fence was built to divide a commonly owned unit of real property; further, that "No boundary dispute was being settled by the erection of the fence." Rather, there was "some implication in this record that the fence was erected and maintained to enclose cattle, not to delineate a boundary." Finally, Judge Reif, now Justice Reif, specially concurred for the purpose of emphasizing:

> "... a property owner is not required to place a fence on the property line and does not give up any rights by placing a fence *off* the property line and along some line *within* the property. In my opinion, East Landowners have the additional burden of showing who built the fence for purposes of boundary by acquiescence and adverse possession." (Emphasis in original.)

¶ 11 A Petition for Certiorari filed in *McGlothlin I* was denied by the Oklahoma Supreme Court by a vote of nine to zero and mandated December 14, 2007. Therefore, *McGlothlin I* is now the law of the case.

### McGlothlin II

¶ 12 After remand, a non-jury trial was held. The same trial court once again determined the doctrine of boundary by acquiescence applied to establish the boundary between the parties' land, and additionally found the doctrine of adverse possession applied, giving prescriptive title of portions of West Landowners' property to East Landowners. West Landowners once again appeal.

¶ 13 In *McGlothlin II,* to its credit, the trial court made extensive, carefully written findings of fact and conclusions of law. In doing so it fashioned a remedy providing ingress and egress on the current roadway, holding the original fence between the properties is the new boundary line, and giving each party some of the other's property under the theory of adverse possession.

¶ 14 We reverse the trial court's order. We hold under these facts the doctrine of boundary by acquiescence does not apply, and there is insufficient proof that the doctrine of adverse possession applies.

---

2. The boundaries of East and West Landowners' lots had been surveyed many years earlier and were described in their respective deeds. The 1992 survey was merely to confirm the boundary lines in the deeds, which were never in dispute.

## STANDARD OF REVIEW

¶ 15 The issue presented is the application of law to facts. We review this *de novo*. *Villines v. Szczepanski*, 2005 OK 63, ¶ 8, 122 P.3d 466, 470; *Booth v. McKnight*, 2003 OK 49, ¶ 12, 70 P.3d 855, 860. We claim plenary, independent and non-deferential authority to examine a trial court's legal rulings. *Manley v. Brown*, 1999 OK 79, ¶ 22 n. 30, 989 P.2d 448, 456 n. 30.

### *Presumptions in Favor of Record Title Holder*

¶ 16 All presumptions are in favor of the record title holder, here, the West Landowners. *Francis v. Rogers*, 2001 OK 111, ¶ 13, 40 P.3d 481, 486; *Willis v. Holley*, 1996 OK 107, ¶ 5, 925 P.2d 539, 540; *Tindle v. Linville*, 1973 OK 64, ¶ 8, 512 P.2d 176, 178. Prescriptive title is disfavored and not to be made out by inference. *Francis, supra.; Willis, supra*, at ¶ 5, 925 P.2d at 540; *Tindle, supra*, at ¶ 8, 512 P.2d at 178. The party seeking prescriptive title, East Landowners, have the burden of proving every element by clear and positive proof. *Willis, supra*.

## ANALYSIS

¶ 17 The context for the analysis in *McGlothlin II* must include established principals of law concerning record title, proper application of the doctrines of prescriptive title, boundary by acquiescence, boundary by agreement, and the Statute of Frauds. Moreover, statutory amendments to Title 4, Animals, Restraint and Enclosures (4

O.S.Supp.2007, § 150.1) relating to the erection and maintenance of fences between property owners, should be included in such context, because of the light it sheds on the subject of fences, their origins and purposes, and the rights and duties of the adjoining landowners who create them.[3]

### I. *DOCTRINE OF BOUNDARY BY ACQUIESCENCE*

¶ 18 *Lewis v. Smith*, 1940 OK 276, 187 Okla. 404, 103 P.2d 512, sets out the elements of the doctrine of boundary by acquiescence:

Since plaintiff pitches his claim to the boundary upon acquiescence, he thereby eliminates agreement in the sense of a contract and relies wholly upon the acts of the various actors. Thus we have (1) the division of a unit of land; (2) the running of a fence between the divided portions of the unit deviating from the true line as established by government survey; (3) the continued maintenance of the fence for 27 years; and (4) the use by the respective parties of the land lying on their respective sides of the fence only. Is this sufficient to establish title by acquiescence? We think it is . . . .

*Id.*, at ¶¶ 8, 9, 103 P.2d at 514.

¶ 19 These elements have been examined and applied where appropriate, both before *Lewis* was pronounced (*see Roetzel v. Rusch*, 1935 OK 405, ¶ 18, 172 Okla. 465, 45 P.2d 518, 522; *Rocher v. Williams*, 1938 OK 376, ¶ 15, 183 Okla. 221, 80 P.2d 649, 651) and after-

---

**3.** Recognizing that many of these disputes could be resolved in their infancy by full disclosure and open communication between the adjoining landowners, the Oklahoma Legislature enacted § 150.1, effective November 1, 2007. This section states, in relevant part:

A. If a survey obtained by a property owner reflects a property line across an existing boundary or division line fence, said property owner shall not damage or remove the existing fence ... until the adjacent property owner has been given notice. The notice shall include a copy of the survey, the nature of the relief requested, and notice that the court may award attorney fees and costs to the prevailing party if an action to establish title is filed by the requestor against the recipient. . . .

B. If no agreement has been reached by the adjoining property owners within thirty (30) days from receipt of the notice sent pursuant

to subsection A of this section, the property owner may cause an action to be filed against the adjacent property owner in the district court in the county where the property is located to establish title to the parcel of property at issue. . . .

This is a well-intended and purposeful law which has the potential to resolve most of these disputes by agreement of the parties before such disputes ripen into litigation. Indeed, this statutory procedure, had it been followed, could well have resolved the case before us, which has once before been tried, appealed, considered and decided by the Court of Civil Appeals, then denied certiorari by the Supreme Court of Oklahoma, and is now back again for a second review. Obviously, untold judicial resources at both the trial and appellate level have been consumed by the dispute between these parties.

wards (*see Lamm v. Hardigree*, 1940 OK 494, ¶ 9, 188 Okla. 378, 109 P.2d 225, 226; *Piquet v. Piquet*, 1946 OK 26, ¶ 5, 196 Okla. 419, 165 P.2d 622, 624; *Kinkade v. Simpson*, 1948 OK 186, ¶ 8, 200 Okla. 507, 197 P.2d 968, 970; and *Francis v. Rogers*, 2001 OK 111, ¶ 18, n. 17, 40 P.3d 481, 487, n. 17). Indeed, there are numerous cases addressing this doctrine, many of which have no precedential value. Moreover, the facts in many of those cases are not set out in sufficient detail to determine exactly under what circumstances the doctrine applies.

¶ 20 We will not re-examine the *Lewis* elements here. The trial court, in its efforts to resolve the matter equitably between the parties, spent considerable time in analyzing *McGlothlin I* and providing its interpretation of the cases on which it relied. This is reflected in its detailed order of judgment. However, no doubt influenced by the arguments of the parties and the desire to reach an equitable result, the trial court once again found the doctrine of boundary by acquiescence applied even though no proof existed as to the origin and purpose of the fence in question. Moreover, neither the trial court nor the parties followed the law of the case doctrine. We have re-examined the relevant cases and remain convinced the doctrine of boundary by acquiescence does not apply here.

■ ¶ 21 A careful reading of the cases set out above reveals the doctrine of boundary by acquiescence applies only where there is uncertainty or doubt as to the true bound-ary line, or where no surveyed or recognized boundary line existed when the fence was erected.[4] *See Lewis, supra*, at ¶ 7, 103 P.2d at 514;[5] *Rocher, supra*, at ¶ 15, 80 P.2d at 651;[6] *Piquet, supra*, at ¶¶ 0, 2, 165 P.2d at 622, 623;[7] *Lamm, supra*, at ¶ 8, 109 P.2d at 226;[8] *Kinkade, supra*, at ¶ 2, 197 P.2d at 969;[9] *Buckner v. Russell*, 1958 OK 237, ¶¶ 9, 13, 331 P.2d 401, 403–04;[10] and *Patterson v. Meyer*, 1910 OK 355, ¶¶ 0, 2, 28 Okla. 304, 114 P. 256, 256–57.[11] See also, *Francis, supra*, at ¶¶ 11, 21, 40 P.3d at 485, 488, which held boundary by acquiescence did not apply because the deed clearly described the true boundary and there was no evidence "that the location of the true boundary was unknown."

■ ¶ 22 East and West Landowners took title to their respective properties by written deed with full knowledge of the legally-described boundaries of their property. Later surveys confirmed the boundary lines. Thus, there is no dispute, no mistake, and no ignorance regarding the true boundary line dividing East and West Landowners' properties. Because of this certainty of the true boundary line, East Landowners are not attempting to enforce an agreement by which the fence establishes a boundary with their neighbor because of uncertainty regarding the true boundary; rather, they are claiming land belonging to another. As discussed below, this may only be accomplished by deed or by adverse possession. It cannot be accomplished by the doctrine of boundary by

4. In this opinion, we use the term "boundary" to mean the legally-described line, set out either in a deed or by survey, separating two parcels of real property. The term "partition" describes the subdivision of a parcel of real property into smaller parts. Fences are often erected to memorialize a boundary line or partition line. In some instances, but not all, the fence may serve a dual role. It may mark both a partition and a boundary. In short, every boundary fence is also a partition fence, but not every partition fence is a boundary fence.

These terms should not be confused with the equitable action of partition, wherein owners in common may petition the court to divide, or partition, the commonly held land into smaller parcels to be held in severalty.

5. "It does not appear that the true boundary was known or unknown to them .... until the true line could be located later."

6. "Where, as in this case, the exact location of a common boundary line is unknown to the owners of the adjacent tracts ..."

7. "never been any dispute ... until ... a new local survey [was] made."

8. "[i]nformation recently acquired from a surveyor ..."

9. "At that time the exact location of the line ... was not definitely known or established...."

10. "[t]hree different surveys which varied widely ..." "Surveyor admitted there are 'numerous errors in government surveys.'"

11. "Where the boundary line between joint owners of realty is in dispute, a parol agreement between them locating such boundary line is not within the statute of frauds."

acquiescence or the doctrine of boundary by agreement.[12]   To apply the doctrine of boundary by acquiescence in this manner violates the Statute of Frauds.

### *The McGlothlin II Court's Order Violates the Statute of Frauds*

¶ 23 The Statute of Frauds, 15 O.S.2001, § 136, states in part:

The following contracts are invalid, unless the same, or some note or memorandum thereof, be in writing . . .

4. An agreement . . . for the sale of real property, or *of an interest therein;* (emphasis added).

¶ 24 Establishing a boundary by agreement does not violate the Statute of Frauds. *Rocher v. Williams,* 1938 OK 376, ¶ 15, 183 Okla. 221, 80 P.2d 649, 651.   In *Patterson v. Meyer,* 1910 OK 355, 28 Okla. 304, 114 P. 256, the Oklahoma Supreme Court held in its syllabus:

Where the boundary line between joint owners of realty is in dispute, a parol agreement between them locating such boundary line is not within the statute of frauds

*Id.* at ¶ 0, 114 P. at 256.

The *Patterson* Court explained:

The statute is a rule of conveyance. It requires a writing to create an interest in lands.   But adjoining owners who adjust their division line by parols do not create or convey any estate whatever between themselves.   No such thought or intention influence their conduct.   After their boundary is fixed by consent, they hold up to it by virtue of the title deeds, and not by virtue of a parol transfer.   Generally, indeed, they feel that their rights as defined

in the title papers have been abridged rather than enlarged by the agreed line; and this because their treaty proceeds on the basis that the exact right between them is doubtful.   Out of the doubtfulness of the right springs the consideration which binds parties to such agreements. . . .

*Patterson, supra,* at ¶ 2, 114 P. at 257.

¶ 25 Thus, the doctrines of boundary by agreement or boundary by acquiescence do not violate the Statute of Frauds because their application does not transfer title or an interest in property.   Rather, these doctrines are the means by which two property owners, or their assigns, establish a boundary line between properties they own, the actual boundaries of which are unknown.   The doctrines are applied to recognize that which has been already established, *i.e.,* the boundary, not to add or subtract land that is already owned.

¶ 26 By erroneously applying the doctrine of boundary by acquiescence, and using this as a basis to transfer ownership of an estate in real property, the trial court's order in *McGlothlin II* created a new interest in the taken property and transferred it without a writing, violating the Statute of Frauds.

### *Purpose of the Fence*

¶ 27 We reverse the order for an additional reason: the record suggests the purpose of the fence was not to establish a boundary, but was merely a partition fence.[13]   Knowing the purpose for the fence is an important factor in applying the doctrine of boundary by acquiescence.   In *Kinkade,* the Court held:

---

**12.**   Boundary by Agreement is closely related to, though distinct from, the doctrine of boundary by acquiescence.   It is defined as:

[w]herein the exact location [of the true boundary] is unknown but the owners mutually agree on the location of their boundary line though it may vary from the description in their conveyances. . . .

*Lake; For Use Of Benton v. Crosser,* 1950 OK 49, ¶ 9, 202 Okla. 582, 216 P.2d 583, 585; *Francis v. Rogers,* 2001 OK 111, ¶ 19, 40 P.3d 481, 487.

In short, if both landowners agree to erect a fence or marker in an effort to establish the boundary between their properties, where the

true boundary is unknown or in dispute, a boundary by agreement is established.   If the fence was erected by remote predecessors in title of the current owners to establish the boundary between the properties, where the true boundary is unknown or in dispute, and has been regarded by all subsequent owners as the boundary for at least 15 years, the courts infer the parties agreed, or acquiesced to, the fence representing the boundary between the properties.   In short, the doctrines are identical in concept and application, differing only when answering the question, who built the fence?

**13.**   *See* n. 2, *supra.*

[i]t clearly appears that the fence was not erected as a boundary fence, but simply for the purpose of enabling the builders of the fence to serve their own purposes.

*Id.* at ¶ 6, 197 P.2d at 969–970.

¶ 28 There is evidence in this case that as early as 1963, West Landowners knew the fence they maintained with East Landowners was not on the true boundary line, but enclosed less than the whole. West Landowners maintained the fence to contain their cattle and not to establish a boundary. Because the road beyond their fence was used by both parties and their neighbors needing access from the section line road to property to the south, West Landowners chose not to move the fence across the road and place it on the boundary line because to do so would require opening and closing a gate each time for access to the road.

¶ 29 This analysis comports with the concerns expressed in *McGlothlin I* that an owner is not required to place a fence on the boundary line and does not run the risk of losing his property to a neighbor simply because he chooses to enclose less than all his property with a fence.[14]

¶ 30 Therefore, for the reasons set out above, we hold the trial court misapplied the doctrine of boundary by acquiescence. The true boundary line between the properties was known and not disputed or questioned; therefore, the doctrine does not apply. Because East Landowners sought by their quiet title action to take property legally belonging to West Landowners, they are confined to doing so either by written agreement between the parties, *i.e.*, a deed, or by adverse possession.

II. *TITLE BY ADVERSE POSSESSION*

■ ¶ 31 The trial court also found that the same facts supported the grant of prescriptive title under the theory of adverse possession. West Landowners argue that East Landowners did not meet their burden by clear and positive proof to show continu-

ous and exclusive use. *Willis, supra,* at ¶ 5, 925 P.2d at 540. We agree.

¶ 32 We cite the following cases at length because the facts in them are similar to those before us. The Oklahoma Supreme Court ruled in *Irion v. Nelson,* 1952 OK 331, 207 Okla. 243, 249 P.2d 107, that:

[ ]A mere permissive use of a way over the land of another, however long indulged in, will not ripen into an easement.

And

[ ]Where it appears that the original use of a road was permissive, the burden of proving that such permissive use had ceased and had become adverse is thrown upon the party asserting same.

*Id.* at ¶ 0, 249 P.2d at 108 (syllabus by the court). The *Irion* Court went on to state:

The evidence in the present case fails to show that the defendant or the former owners of his land ever made any objection to the use of the road over said land. Our remarks in *Friend v. Holcombe* [1945 OK 267, 196 Okla. 111, 162 P.2d 1008], in speaking of a passway over grazing lands in Osage county are therefore applicable to the road in question as it originally existed. There we said:

"In the present case the evidence disclosed that no objection was ever made by the defendants or their predecessors in title to people crossing their lands. No doubt they and their predecessors in title were following the 'good neighbor' policy, .... and defendants' attention was never called to the fact that plaintiff or others using the roadway were claiming such use as a right or adversely to defendants, nor was there any testimony in the record that would impute to defendants that the use by plaintiff and others was adverse."

We think, therefore, that under the evidence of this case, the original use of the road was not hostile but by permission of the owners. That being true, when, if at

---

14. For example, a person fencing in 9 acres of his 10–acre tract should not run the risk of losing the unfenced acre to a neighbor simply because it is not fenced. That fence, while it is a partition fence, is not a boundary fence. Put simply, if a landowner approaches a fence from his side of the property and passes through a gate to the other side, upon whose property is he now standing? If the property he is standing on is his, the fence is a partition fence; if his neighbor's, it is a boundary fence.

all, did it become adverse? The rule seems to be well established that where the use was originally permissive, the burden of proving that such permissive use had ceased and had become hostile in character is thrown upon the party asserting same. In 17 Am.Jur. 981–982, it is said:

"If the use originates by permission or license and an easement by prescription is claimed, the burden of proving that the permissive use had ceased and that the use for the necessary period had been adverse under claim of right is on the party asserting the fact of adverse user, and in case of doubt, such fact will be resolved against him."

*Id.* at ¶¶ 12, 13, 249 P.2d at 110–11.

¶ 33 In *Kinkade, supra,* 1948 OK 186, 197 P.2d 968, the defendants, who claimed prescriptive title to portions of the plaintiff's property laying on defendants' side of a fence argued the plaintiff was estopped from denying title to the defendants for the reason that the defendants had mowed the lawn, trimmed the shrubs, and planted grass on their side of the fence. The *Kinkade* Court rejected this argument, stating the plaintiff's failure to object to such activity did not operate as an estoppel. *Kinkade, supra,* at ¶ 11, 197 P.2d at 970.

¶ 34 We recently reviewed this issue on similar facts. In *Hernandez v. Reed,* 2010 OK CIV APP 65, 239 P.3d 186, the parties owned adjacent lots. When Hernandez bought the property in 2001, a chain link fence was located 8.4 feet inside the true boundary line. He maintained the fence in that location. The unfenced property was used since 1974 by his neighbor, Reed, for various purposes. *Hernandez* states:

Appellants assert they maintained the area on the east side of the chainlink fence, treating it as their yard, ... Reed cleared the disputed area, mowed, cleaned up the trees, and maintained a garden for several years. He also constructed a dog pen in the disputed area, which was dismantled and rebuilt on several occasions as needed. .... Many ... photos showed how Appellants used the disputed area, several pictures showed playground equipment, Appellants' children playing and flower beds maintained around trees with the lawn neatly mowed.

*Id.* at ¶ 8, 239 P.3d at 189.

¶ 35 In 2006, Hernandez notified Reed to stop using the 8.4 feet of property and filed suit to quiet title. Reed countersued on the theories of boundary by acquiescence and adverse possession. Various witnesses testified that the contested area was used as an alleyway and access route by different persons, including school children walking to school, neighbors, and the public at large. The trial court denied Reed's claim of adverse possession, finding no proof of exclusive control over the disputed strip of land. Quiet title was granted to Hernandez, the owner of record. In analyzing the resulting appeal, we stated:

Ultimately, Appellants' 1989 ownership claim does not reconcile with their ever-changing ebb and flow of influence over this eight-foot strip, with fixtures that came and went and pieces of fence that never quite encircled the disputed property. In this case, open, notorious, exclusive and hostile possession was not supported by clear and positive proof. *Francis,* 40 P.3d at 486. "The moment the possession is broken it ceases to be effectual, because as soon as, and as often as, a break occurs the law restores the constructive possession of the owner." *Mason [v. Evans],* 410 P.2d [534] at 541 [ (1965) ]. It was Appellants' burden to satisfy each element of possession in support of their claim. *Mason,* 410 P.2d at 540. Appellants presented evidence they treated and thought of this area as their own yard. However, the boundaries were porous and Appellants' actions were at times ambiguous, clear and positive proof was lacking.

. . .

Appellants presented evidence they cared for the disputed tract as if it was their own. However, Appellees presented evidence of their own use of the disputed area and claimed Appellants' use was only by virtue of their permission and good graces. At the same time, there was evidence the disputed area was never enclosed by Appellants and a constant stream of access to the area was available

throughout Appellants' ownership of lot nine. Therefore, Appellants needed to cobble together fifteen years of evidence that they and owners of lot fourteen acquiesced in the chainlink fence boundary for a consecutive fifteen year period. Based on the record available, Appellants failed to do this.

*Id.* at ¶¶ 19, 23, 239 P.3d at 190, 191.

¶ 36 The Oklahoma Supreme Court in *Willis v. Holley*, 1996 OK 107, 925 P.2d 539, an easement by prescription case, set out the following facts, similar to those now before us.

> The plaintiffs ... own the land adjacent to that of the defendant, Wanda J. Holley (Holley). About 1949, plaintiffs' predecessor, Mr. Martin, began using a roadway over the Holly farm to access what is now the Willises' farm.... The Willises and their predecessors have used the roadway continuously to access the Willises' farm.
>
> [ ] Wanda J. Holley moved onto the farm. She fenced the previously unenclosed farm and put up a gate. After the Willises refused to close the gate, Holley refused the Willises permission to use the property.
>
> The Willises filed a quiet title action and requested an injunction. The trial court granted the injunction and quieted title to the roadway in the Willises giving them an easement....

*Id.* at ¶¶ 2, 3, 4, 925 P.2d at 540.

The *Willis* Court reversed the trial court, stating:

> To acquire possession by prescription the "possession must be open, visible, continuous, and exclusive, with a claim of ownership, such as will notify parties seeking information upon the subject that the premises are not held in subordination to any title or claims of others, but against all titles and claimants." *Id.* Furthermore, the possession must also be actual, notorious, and hostile. *Id.* 249 P.2d at 109–10. If the owner acquiesces in or consents to the use of the land, then the use is not adverse and title by prescription cannot be acquired. *Board of County Comm'rs of Jackson County v. Owen*, 196 Okla. 538, 166 P.2d 766, 767 (1946).

> All the evidence presented in the present case is that the use of the road was permissive and not adverse to the owner. In fact, no evidence was introduced which would even suggest that the use of the road was adverse. However, the Willises posit that the use of the road for many years creates a presumption that the use was adverse and that the burden is on Holley to show otherwise. We do not agree.

*Id.* at ¶¶ 6, 7, 925 P.2d at 541.

¶ 37 Applying the reasoning of *Hernandez* and *Willis* to the facts presented, once West Landowners showed the use of those portions of the road which lay on their property was permissive, the burden shifted to the East Landowners to show such permission had been revoked and was no longer in effect.

¶ 38 We find merit to West Landowners' contention that East Landowners have failed to prove exclusive use. There is considerable testimony from both parties, as well as a finding of fact in the trial court's order, that the road in question was used by many people, including West Landowners, Delaware County employees who graded the road; public school buses, GRDA utility service employees, and other members of the public, all of whom have used the road for various purposes during the previous fifty years. Further, there is undisputed testimony that West Landowners knew the actual boundary line of their property encompassed a portion of the disputed road, but chose not to extend a fence to enclose the road, instead maintaining the fence short of the boundary line and permitting East Landowners and others to use the road to access their respective properties. Certainly, they did not treat the fence as a boundary.

¶ 39 As the record now stands, there is no dispute about the ownership of the tracts, the location of the fence and road relative to the true boundary line, that various people used the road, and that East Landowners used the property up to the fence, believing the fence was the boundary. However, belief in an erroneous boundary line does not make it so. As our case law clearly demonstrates, the taking of another's unfenced property by

prescription requires strong proof. Acts such as using the roadway (*Willis* at ¶ 2, 925 P.2d at 540) or even gardening, installing playground equipment, mowing, or maintaining the area up to the fence, (*Hernandez* at ¶ 16, 239 P.3d at 190) do not overcome the presumption in favor of the record landowner that such use is permissive. It therefore cannot be adverse. The trial court's finding that the doctrine of adverse possession operated to grant prescriptive title by adverse possession to East Landowners is reversed.

## III. *OTHER ORDERS*
### *West Landowners*

¶ 40 Though not directly raised as an issue, the trial court also quieted title in West Landowners to a small portion of East Landowners' property under the theory of adverse possession. For the same reasons set out above, we find the elements of adverse possession are not met and the trial court's order on this issue is likewise reversed. In short, we find the surveyed boundary line remains intact as the true boundary between the parties and determines their ownership. No portion of either party's land is subject to adverse possession by the other.

¶ 41 West Landowners requested a prescriptive easement over the road in the event prescriptive title was granted to East Landowners. The trial court denied this request, finding West Landowners did not meet the elements of prescriptive easement. We agree West Landowners are not entitled to an easement but for the reason that the property belongs to them so no easement is necessary.

### *Jury Trial*

¶ 42 West Landowners' appellate argument that the trial court erred in not granting them a jury trial on their claims for recovery of the disputed real property and for damages to timber, is moot.

### *Status of the Roadway*

■ ¶ 43 Regarding the disputed roadway, though we hold neither party has proven the requisite elements of an exclusive easement by prescription against the other, we find the principles set out in *Cookson v. Duke*, 1952 OK 169, 206 Okla. 336, 243 P.2d 706, and *Nokes v. Padgett*, 1953 OK 296, 262 P.2d 423, apply.

¶ 44 In *Cookson*, the Court stated in its syllabus:

Where during the unity of title an apparently permanent and obvious servitude is imposed on one part of an estate in favor of another, which, at the time of the severance of title, is in use, and is reasonably necessary for the fair enjoyment of the other, then upon a severance of such ownership, whether by voluntary alienation or by judicial proceedings, there arises by implication of law a grant or reservation of the right to continue such use.

While the mere permissive use of a way over the land of another will not ripen into an easement, yet one who joins his adjacent landowner in the construction of a paved private way over and along the medial line has given such adjacent owner more than a mere license. Each owner, by use of the driveway, is continuously asserting an adverse right to use the portion of the way on the other's lot. And from such use for 15 years the law raises a presumption of the grant of an easement.

*Id.* at ¶ 0, 243 P.2d at 707.

¶ 45 In *Nokes v. Padgett*, 1953 OK 296, 262 P.2d 423, the Court stated:

Where a concrete driveway constructed over and along a property line was continuously used by adjoining owners and tenants, such use constituted a continuing assertion of an adverse right in that portion of the common driveway existing upon the other's property. Such use for the prescriptive period is sufficient to establish an easement by prescription, and authorizes the presumption of a grant unless controlled or explained.

While the mere permissive use of a way over the land of another will not ripen into an easement, yet one who joins his adjacent landowner in the continued use of a paved private way over and along the medial line has given such adjacent owner more than a mere license. Each owner, by use of the driveway, is continuously asserting an adverse right to use the portion of the way on the other's lot. And from such

use for 15 years the law raises a presumption of the grant of an easement.

*Id.* at ¶¶ 0, 262 P.2d at 423, 424 (syllabus by the court).

¶ 46 In this case there is evidence both of unity of title until 1913 and that the "old trail" road has been used by Landowners and the public in the area for a period of more than 70 years. During that time, no one has attempted to prohibit its use or given express or implied consent to its use. Recognition of the existence of such an easement is not only consistent with the evidence but is mandated by equitable considerations.

¶ 47 We hold that East and West Landowners have each asserted and proven a continuous adverse right for at least 15 years over those portions of the roadway laying on each others' property. While neither is entitled to claim each others' subservient property as their own, they are each entitled to continued, unfettered access over those portions of the road on the property of the other. In short, the parties are placed in a condition of *status quo ante* regarding the access and use of the road. Neither party may prohibit the others' access to the road.

### Easement Given by East Landowners to Southern Property Owners.

¶ 48 The record shows that although the East Landowners gave an easement to the westernmost 33 feet of their property to those property owners south of them, when the road was constructed, it was done so by measuring from the existing fence line rather than the actual boundary line. Thus, a portion of the improved road lies on West Landowners' property. It is axiomatic that to the extent East Landowners granted easement rights over those portions of West Landowners' property, that grant is void. However, rather than require the East Landowners and the Southern landowners to re-grade a new road or rebuild the fence in conformity with the easement, we again apply *Cookson* and *Nokes* and hold the written easement remains in force as to all parties.

### Permanent Injunction Dissolved

¶ 49 The trial court granted a permanent injunction in favor of East Landowners enjoining West Landowners from blocking the road to prevent East Landowners access to their property. We reverse and vacate the injunction.

### Attorney's Fee

¶ 50 The trial court's award of an attorney's fee and costs to East Landowners is reversed.

### CONCLUSION

¶ 51 We hold that unless a boundary line created by deeds or according to a survey is disputed or uncertain, the doctrines of boundary by acquiescence or boundary by agreement are inapplicable. Where, as here, there is no dispute regarding the boundary line created by the deeds and confirmed by a survey, the only way to acquire the property lying beyond that boundary line is either by deed or by prescriptive title obtained by adverse possession. To allow otherwise, *i.e.,* to acquire property beyond that described by the undisputed surveyed boundary line using the doctrines of boundary by acquiescence or of boundary by agreement, violates the Statute of Frauds. A landowner does not risk losing portions of his property simply because he chooses to enclose less than all of it with a fence. Finally, the origin and purpose of a fence is a significant factor in determining whether the fence is meant to establish a boundary or is merely a partition fence.

¶ 52 The record contains official surveys showing the true boundary line between the parties. That boundary remains intact and defines the parties' property lines and their respective estates in their real property. Neither party is entitled to prescriptive title to any portion of the other's property. Unfettered use of those portions of the access road lying on each party's respective property shall be permitted by each party pursuant to the implied right of continued use recognized and established herein.

¶ 53 REVERSED.

RAPP, J., and THORNBRUGH, J., concur.