2008 OK CIV APP 77

STATE of Oklahoma ex rel. Robert E. "Gene" CHRISTIAN, District Attorney of Grady County, State of Oklahoma, Plaintiff/Appellee,

v.

Vernie McCAULEY, Gary Glasgow, Eva Rose, Talford Graham, Tim Page, and Opal Page, Defendants/Appellants.

No. 104,171.

Court of Civil Appeals of Oklahoma, Division No. 4.

April 10, 2008.

Rehearing Denied Aug. 22, 2008.

Richard L. Allen, Scott R. Tack, Allen, Allen & Tack, P.A., Chickasha, OK, for Plaintiff/Appellee.

B. Wayne Dabney, and Timothy C. Dowd, Elias, Books, Brown & Nelson, Oklahoma City, OK, for Defendants/Appellants.

DOUG GABBARD II, Presiding Judge.

¶1 Appellants Vernie McCauley, Gary Glasgow, Eva Rose, Talford Graham, Tim Page, and Opal Page appeal the trial court's denial of their petition to vacate a default judgment of escheat granted in favor of the State of Oklahoma, ex. rel. District Attorney Gene Christian. We affirm in part, reverse in part, and remand for further proceedings.

## BACKGROUND

¶2 Oklahoma's escheat statutes, 84 O.S. 2001 & Supp.2007 §§ 271–277, provide that abandoned property may, under certain circumstances, be escheated to and vested in the State. Under these statutes, real and personal property is deemed abandoned when a person dies without having devised his or her property, dies without heirs, or fails to exercise ownership rights in or is absent from his or her property for the statutory period.

¶3 It is often difficult to determine whether an owner has failed to exercise ownership or abandoned his or her rights in severed mineral interests. Mineral interests are not subject to real estate taxes, and are not registered or tracked by county assessors. However, there is a gross production tax upon income derived from such interests, and when oil companies are in possession of such income and cannot find the owner thereof, they are required to report this fact to the State Treasurer after five years. Upon receipt of such report, the Unclaimed Property Division of the State Treasurer's office publishes a list of the owners and the unclaimed property in an attempt to locate the owners. If the owners have not claimed their royalties after the statutory period, their mineral interests are deemed abandoned.[1] Upon receiving notice of this fact from the Unclaimed Property Division, the District Attorney in the county in which the mineral interest is located may then file a petition for escheat under § 271.1. Under § 274, summons must be issued to the owners, as in other civil cases. If a judgment of escheat or sale has been entered, the court must order the property appraised and sold at a sheriff's sale with monies collected therefrom placed in the permanent state school trust fund, pursuant to article 11, § 2 of the Oklahoma Constitution.

¶4 In early 2004, the Unclaimed Property Division mailed an extensive list of abandoned mineral interests to the District Attorney for Grady County, Oklahoma (the State). On September 29, 2004, the State filed a petition to escheat and quiet title against 161 mineral owners and their unknown successors, heirs, and assigns. Appellants Vernie McCauley and Gary Glasgow were named defendants, while the remaining Appellants are alleged successors, heirs, and assigns of named defendants.

¶5 The State notified many of the named defendants by personal service. However, Appellants or their predecessors in interest were only notified by publication. Prior to giving such notice, the State filed an affidavit that it had mailed first class letters to the last known address of each owner as set forth in the State Treasurer's report, and had also conducted a "detailed internet search" for the owners.

¶6 On May 31, 2006, the trial court entered a journal entry of judgment reciting that it had inquired into the sufficiency of service, determined that the State had reviewed Grady County judicial records (including those related to probate and determination of death), and "all secondary sources available, including but not limited to telephone directories and city directories, before they resorted to the use of publication," and found that the publication notice met the minimum requirements of state and federal due process. The court ordered a sheriff's sale. The sale was conducted and the minerals were sold for approximately $287,700.

¶7 In August 2006, Appellants filed objections to the confirmation of sale and petitions to vacate pursuant to 12 O.S.2001 §§ 1031(2)

---

1. The abandonment period for minerals was originally seven years. However, after the petition in this case was filed, but before the default judgment was entered, 84 O.S. Supp.2007 § 271.1 was amended to require a *15–year period* of abandonment for mineral interests. The parties have neither raised nor briefed the issue of which time period applies. For this reason, and because we are reversing on other grounds, we find that this issue is not yet ripe for our review.

& (3). Appellants challenged the constitutional sufficiency of the publication notice, and the regularity of the judgment. The State replied by asserting that Appellants had no standing to intervene in the action, the publication notice met the minimum requirements of due process, and default judgment was proper. On November 27, 2006, after a hearing, the trial court found:

> 1. That Farmer's Investment Company was suspended by the State of Oklahoma in 1957. That Talford Graham is a minority stockholder of Farmer's Investment Company, not an officer of said corporation, and therefore lacks standing to act on behalf of the corporation.
> 2. That Alma Lee Rose and Owen· H. Myrick are deceased persons. That no probate proceedings have been filed of record in Grady County regarding the Estate of Alma Lee Rose or Owen H. Myrick. That Defendants Eva E. Rose, Opal Page and Tim Page lack standing to prosecute the instant action.
> 3. That Vernie McCauley, Gary Glasgow, Farmer's Investment Company, Alma Lee Rose and Owen H. Myrick were properly served by publication. That the Plaintiffs exercised due diligence in attempting to locate the Defendants prior to obtaining service by publication.

The trial court denied Appellants' petitions to vacate, denied their objections to the confirmation of sale, and confirmed the sale.

¶ 8 Appellants now appeal.

## STANDARD OF REVIEW

■ ¶ 9 A trial court's order granting or denying a petition to vacate is reviewed for abuse of discretion. *Patel v. OMH Med. Ctr., Inc.,* 1999 OK 33, ¶ 20, 987 P.2d 1185, 1194. To reverse a trial court on the grounds of abuse of discretion, we must find that the trial judge made a clearly erroneous conclusion and judgment, contrary to reason and the evidence. *Abel v. Tisdale,* 1980 OK 161, ¶ 20, 619 P.2d 608, 612.

## ANALYSIS

### 1. *Standing*

¶ 10 Appellants first assert the trial court erred in finding that Talford William Graham, Eva Rose, Tim Page, and Opal Page have no standing to contest this action. Indisputably, none of these Appellants were named defendants in the State's petition.

■ ¶ 11 Nevertheless, Appellant Talford Graham asserts standing as a shareholder in, and president of, the corporate defendant Farmer's Investment Company. Generally, corporations must sue or defend themselves in their corporate name. 18 O.S.2001 § 1016(2). However, when a corporation fails to pay its franchise taxes, it may neither sue nor defend an action until it is reinstated. 68 O.S. Supp.2007 § 1212(C). Here, the record reflects that Farmer's Investment Company was suspended for failing to pay franchise taxes in 1957. Thus, neither the corporation, nor a corporate officer acting on its behalf,[2] may sue or defend this action.

■ ¶ 12 Nor may Appellant Graham sue as a stockholder. Stockholders may only sue on behalf of corporations in limited circumstances. *See* 18 O.S.2001 § 1126; *Mainord v. Sharp,* 1977 OK CIV APP 29, ¶ 9, 569 P.2d 546, 548. Appellant Graham has failed to establish his right to defend on behalf of the corporation or himself, and, therefore, we agree with the trial court that he had no standing to intervene.

¶ 13 Rose and the Pages claim standing as heirs of named defendants who were deceased at the time the action was filed. Generally, the personal representative[3] is the proper person to represent the estate of a decedent in suits by or against it. 58 O.S. 2001 § 252. However, 58 O.S.2001 § 290 provides that while the executor or adminis-

---

2. In view of this holding, we need not resolve whether Appellant Graham was a legitimate corporate officer. The trial court found that he was not, apparently because he only owned 142 of the 5,000 outstanding shares and did not give due and proper notice of his alleged election to the other shareholders of the corporation.

3. Under Oklahoma law, "personal representative" is synonymous with executor and administrator. 58 O.S.2001 § 11.

trator of an estate is entitled to the possession of all the real and personal property of a decedent:

> The heirs or devisees may themselves, or jointly with the executor or administrator, maintain an action for the possession of the real estate, or for the purpose of quieting title to the same, against anyone except the executor or administrator.

According to *Turner v. Johnson*, 1922 OK 197, 86 Okla. 196, 207 P. 555, this means that heirs or devisees may independently maintain an action regarding real estate inherited by them against anyone except the personal representative, without the personal representative joining suit. *See also Burford v. Stuart*, 1966 OK 43, 412 P.2d 169.

¶ 14 Although *Turner* and *Burford* were cases in which a probate had been initiated and a representative appointed, the Supreme Court has also held that heirs may maintain actions to enforce or protect their interests in estate property where there is no pending administration or probate, *Evans v. Miller*, 1925 OK 39, 105 Okla. 289, 233 P. 199; where a probate is unnecessary, *Modern Woodmen of America v. Crudup*, 1935 OK 985, 175 Okla. 183, 51 P.2d 718; where the personal representative has committed fraud or collusion, *Farmers' Bank & Trust Co. v. Sheffler*, 1909 OK 309, 78 Okla. 44, 186 P. 479; or where the personal representative has an interest adverse to the other heirs or refuses to sue, *American Sur. Co. of New York v. Wilson*, 1935 OK 377, 172 Okla. 107, 44 P.2d 35. *See also Simon v. Shaffer*, 11 F.Supp. 450 (D.C.Okla.1935); 26B C.J.S. *Descent and Distribution* § 90 (2001). Generally, heirs may independently sue to protect their equitable interest in inherited property, whether or not a probate is pending or the personal representative joins in the lawsuit.[4]

¶ 15 Here, Eva Rose testified that her mother-in-law Alma Lee Rose died intestate, that the estate had never been probated, and that her mother-in-law left four children, one of whom married Eva Rose. Eva Rose testified that her husband died leaving a will naming her as his sole beneficiary, and that no probate of his estate had been initiated. Thus, we conclude that Eva Rose had standing to defend her equitable interest.

¶ 16 Testimony was also presented that Owen H. Myrick died 20 years ago, that his estate was probated, and that his entire estate was distributed to his sole beneficiary, his nephew, Dan Page. Testimony was presented that Dan Page died in 1998, that his will was probated, and that all of his mineral interest was distributed to his wife, Opal Page. Thus, Opal Page had standing to defend her interest, but her son Tim Page had no interest in the minerals involved in this case and no standing to participate.

¶ 17 We conclude that Appellants Eva Rose and Opal Page have standing, but that Talford Graham and Tim Page do not. Thus, the court's denial of Appellants Talford Graham and Tim Page's petitions to vacate is affirmed.

### 2. Sufficiency of notice

¶ 18 Appellants next assert the publication notice was constitutionally insufficient. Title 84 O.S. Supp.2007 § 274 requires the following notice in an escheat proceeding, upon the filing of a petition:

> [T]he clerk of the court shall issue summons as in other civil cases, requiring the persons named to appear and answer as in other civil cases, and in like manner the clerk shall also issue a summons for publication, setting forth briefly the contents of the petition, for all persons interested in the property to appear and answer within thirty (30) days from the date of such first publication, which summons shall be published as required in other civil suits except that it shall not be required to be published exceeding thirty (30) days before answer required.

Generally, in civil cases, every defendant is entitled to personal service. 12 O.S. Supp. 2007 § 2004. However, publication service is authorized when it is either stated in the

---

4. We disagree with contrary language set forth in *City of Stigler v. Crumley*, 2004 OK CIV APP 80, ¶ 8, 99 P.3d 253, 255, stating that heirs are not free to "exercise the privileges associated with ownership thereof until ... final distribution" and implying that they may not sue or defend their interest in realty until same occurs.

petition or in a separate affidavit filed by the plaintiff or his attorney "that with due diligence service cannot be made upon the defendant by any other method." 12 O.S. Supp.2007 § 2004(C)(3)(a). The requirement of due diligence is one of constitutional importance.

¶ 19 In *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950), the U.S. Supreme Court held that due process guarantees every party the right to be heard in a court proceeding, whether it is one in personam or in rem. Notice of same must be reasonably calculated, under the particular circumstances of the case, to apprise interested parties of the pending action. *Mennonite Bd. of Missions v. Adams*, 462 U.S. 791, 103 S.Ct. 2706, 77 L.Ed.2d 180 (1983).

 ¶ 20 The Oklahoma Supreme Court's decisions have closely paralleled that of *Mullane. See, for example, Blackgold Exploration Co. Ltd. v. First Federal Sav. & Loan Ass'n of Elk City*, 1990 OK 134, 803 P.2d 1138. If possible, actual notice must be given. Because publication notice is not reasonably calculated to provide actual notice, it is constitutionally insufficient when more effective means of notice, such as mailing or personal service, are available. *Harry R. Carlile Trust v. Cotton Petroleum Corp.*, 1986 OK 16, ¶ 13, 732 P.2d 438, 444. Publication notice does not satisfy due process, unless due diligence is first used to find the affected party. *Bomford v. Socony Mobil Oil Co.*, 1968 OK 43, ¶ 12, 440 P.2d 713, 718.

 In *Bomford*, the Oklahoma Supreme Court defined "due diligence" this way:

Due diligence is a relative term lacking a fixed content. It presents a question for judicial determination which must be decided in the first instance by the trial court. Its jurisdiction over the absent defendants clearly depends upon the resolution of that issue. And in order to decide the matter the trial judge must have the facts before him. If the facts before the court have a legal tendency to show a diligent search for the whereabouts of the defendant, or the whereabouts and identity of his heirs, *and the court is satisfied that primary sources at hand, such as local tax rolls, deed records, judicial records and other official records, as well as available secondary sources, such as a telephone directory, a city directory or the like, have been exhausted in a meaningful pursuit of information,* the approval of publication process as a method of notification is to be regarded with the same effect as a decision upon any other fact issue submitted for judicial determination. But an inquiry and determination there must always be.

*Id.* at ¶ 14, 440 P.2d at 718–19. (Emphasis added). As *Bomford* notes, a good faith, meaningful pursuit of information must usually include an examination of relevant public records.[5] Merely stating that due diligence was used is not enough. There must be factual support for the statement, although those facts need not be set forth in the affidavit. *See Blackgold Exploration*, 1990 OK 134 at ¶ 14, 803 P.2d at 1142.

¶ 21 In this case, Charity Morgan, a legal secretary working for the State's attorneys, testified that she conducted the State's due diligence search. She testified this consisted of examining the State Treasurer's unclaimed property list, checking the Oklahoma Corporation Commission website to get details about the wells on the tract involved and then writing the well owners for a list of addresses for the non-claiming owners, checking the Grady County computerized probate records, and looking for non-claiming owners in the Chickasha phone book and on the Yahoo SBC internet white pages. She admitted that she did *not* check the records of the County Clerk (except the probate records), County Assessor, or Corporation Commission for addresses of the non-claiming owners. She admitting finding no address for, and mailing no notice to, Vernie McCauley, Gary **Glasgou**, Alma Lee Rose or her heirs, or Owen H. Myrick or his heirs.

---

**5.** In *Mennonite Board of Missions v. Adams*, 462 U.S. 791, 103 S.Ct. 2706, 77 L.Ed.2d 180 (1983), the U.S. Supreme Court held that publication service is constitutionally insufficient when the name and address of the affected party is *readily ascertainable from public records.*

¶ 22 Appellants presented the testimony of William Robert Parr, a career petroleum landman. Parr testified that due diligence required that one first check primary sources, such as the records of the County Clerk, County Treasurer, and County Assessor, to determine the correct spelling of the owner's names, whether the deeds or records themselves contained any addresses, whether the owners had recently leased any minerals or other property, and whether any co-owners or family members were listed on the deeds, probate records, or leases. Parr testified that one should then check the secondary sources, such as the State Treasurer's website, the Corporation Commission mineral owner's escrow account, OSCN and ODCR probate records, phone books, city directories, and the internet. He opined that Ms. Morgan had not conducted a due diligence search.

¶ 23 Parr testified that the Grady County Clerk's records had a listing for Vernie McCauley and contained a deed on file with her current address in Selana Beach, California. Moreover, Corporation Commission records indicated that another oil company had a well on the same property, had this address, and was sending her royalties at the time the petition was filed.

¶ 24 Parr also testified that the Grady County Clerk's office records contained deeds indicating that the owner of Section 10, T8N, R6W was Gary F. Glasgow, not **Glasgou,** as indicated by the unclaimed property report and petition. These deeds also contained notary seals from Denver, Colorado. Parr testified that he conducted an internet search for a "Gary Glasgow" in Colorado and immediately found that Glasgow had a law office in the Denver suburb of Englewood. The evidence also reflected that while the Treasurer's report incorrectly lists Gary Glasgow as "Gary Glasgou" as to some of his minerals, it correctly lists him as "Gary Glasgow" as to other minerals.

¶ 25 Parr also testified that the County Clerk records contained a mineral deed conveying an interest in Sec. 10, T8N, R6W to J.M. Rose and Alma Lee Rose, husband and wife, of Oklahoma County, Oklahoma. Furthermore, a 2001 Corporation Commission pooling order for the section indicates that J.M. Rose and Alma Lee Rose lived at 2016 N.W. 44th Street, Oklahoma City, Oklahoma. Although J.M. and Alma Lee Rose were deceased, their daughter-in-law Eva Rose lived at the Oklahoma City address when the petition was filed. This was the same address listed for Alma Lee Rose on the State Treasurer's unclaimed property website.

¶ 26 Parr testified that the County Clerk records reflected that Owen H. Myrick was given a deed to Sec. 23, T9N, R5W, which also contained three other sections of land in Grady County, Oklahoma, that a Corporation Commission pooling order had been filed as to another section, and that Corporation Commission records contained an address for Owen Myrick c/o Tim Page, P.O. Box 444, Winnfield, Winn Parish, Louisiana. Although Myrick is now deceased, his estate was probated in Winn Parish, Louisiana, and the subject mineral interest was distributed to Opal Page, Tim Page's mother.

¶ 27 In *Forest Oil Corp. v. Corp. Commission of Oklahoma,* 1990 OK 58, 807 P.2d 774, Forest objected that Oklahoma Natural Gas's publication notice was insufficient because it relied upon Forest's records of production payments in determining who were the record mineral owners. Because Forest did not assert that the mineral owners could be ascertained from any source independent of its list of current payees, and because it was required by law to keep accurate records of the parties with an interest in production units and to pay the proceeds from the sale of oil and gas within six months after the first sale, the Court found that reliance upon those records and a recent title opinion constituted due diligence to support the publication notice.

¶ 28 Here, in contrast, the State failed to supplement the Treasurer's report by examining readily accessible, relevant public records, such as County Clerk and Corporation Commission records. Furthermore, it was clear that had the State done so, Appellants would have received actual notice. Accordingly, we find that the State failed to use due diligence, and, therefore, the publication notice to Appellants Vernie McCauley, Gary Glasgow, Opal Page, and Eva Rose was

constitutionally insufficient to support a default judgment. As to these Appellants, the trial court erred by denying their petitions to vacate and objections to the confirmation of sale.

¶ 29 Because of this ruling, it is unnecessary for us to consider Appellants' third proposition, that the State's proof of abandonment was insufficient to justify judgment in favor of the State.

## CONCLUSION

¶ 30 The trial court's denial of the petitions to vacate and objections to confirmation of sale is AFFIRMED as to Appellants Talford Graham and Tim Page, and REVERSED and REMANDED for further proceedings as to Appellants Vernie McCauley, Gary Glasgow, Eva Rose, and Opal Page.

¶ 31 AFFIRMED IN PART, REVERSED IN PART, AND REMANDED FOR FURTHER PROCEEDINGS.

RAPP, C.J., and FISCHER, J. (sitting by designation), concur.