2013 OK CIV APP 37

EOR DOMESTIC, LLC, a Delaware limited liability company, Plaintiff/Appellee,

v.

David SHROFF, d/b/a Excalibur, Inc.; Avondale Operating Co., an Oklahoma corporation; and Excalibur XYZ, Inc., Defendants/Appellants.

No. 110,100.

Court of Civil Appeals of Oklahoma, Division No. 1.

Feb. 22, 2013.

Patrick O. Waddel, Steven K. Balman, Sneed Lang Herrold, PC, Tulsa, Oklahoma, for Plaintiff/Appellee.

Joseph L. Hull, III, Tulsa, Oklahoma, for Defendants/Appellants.

KENNETH L. BUETTNER, Presiding Judge.

¶ 1 Defendants/Appellants David Shroff, d/b/a Excalibur, Inc. (Shroff),[1] Avondale Operating Co. (Avondale), and Excalibur XYZ, Inc. (XYZ) (collectively, Appellants) appeal the trial court's order granting a motion to disqualify Appellants' counsel, Joseph L. Hull, III, filed by Plaintiff/Appellee EOR Domestic, LLC (EOR). On *de novo* review, we find the trial court erred as a matter of law in disqualifying Appellants' counsel. We reverse.

¶ 2 EOR filed its Petition against Avondale March 31, 2011.[2] Hull filed an Entry of Special Appearance in Intervention for Purposes of Response to Temporary Restraining

---

1. A key fact in this case is that during the litigation, Shroff learned from EOR that Excalibur, Inc. was not a corporation in good standing with the Secretary of State, and indeed had not been a corporation filed on behalf of Shroff (Excalibur, Inc. was an unrelated corporation that had not been in good standing since 1997). In this decision, we refer to the entity which Shroff mistakenly believed existed and he was the principal of as "Excalibur". Because that corporation was defunct and the corporate name was not related to Shroff, the parties later referred to Shroff, d/b/a Excalibur, Inc. to indicate acts and agreements made by Shroff purportedly as principal of Excalibur, Inc.

2. EOR alleged it had entered an Operating Agreement December 21, 2010, in which Avondale was the operator and EOR was the non-operator of the Cottonwood Redfork Sand Unit ("the Unit"). EOR asserted Avondale worked through agents, including its principal, R.J. Abercrombie, and "Consulting Chief (of) Petroleum and Mechanical Engineering, Dave Shroff, d/b/a Excalibur, Inc. and Excalibur XYZ, Inc." EOR claimed it was exercising its right under the agreement to remove Avondale as the operator, because Avondale had breached its fiduciary duty to EOR to account for funds and was not capable of operating the unit in the manner required by the Oklahoma Corporation Commission's rules. EOR averred the OCC had issued a contempt citation against Avondale, and Abercrombie had threatened the life of EOR's principal, Jim Somers, on three occasions. EOR also alleged Avondale had ignored agreements requiring EOR's consent before major decisions involving the unit. EOR asserted these actions showed a threat of irreparable harm if Avondale continued as Operator. EOR asked for a temporary restraining order and preliminary injunction, an order removing Avondale as Operator, and an accounting. EOR additionally sought judgment and damages for breach of fiduciary duty.

Order April 4, 2011.[3] Over the next several weeks, the parties filed increasingly acrimonious pleadings,[4] culminating in EOR's Motion to Disqualify Hull as counsel for Avondale, Shroff, and XYZ, or in the alternative, for sanctions, filed May 25, 2011.

¶3 In its Motion to Disqualify, EOR argued that Excalibur and XYZ both claimed to be the owners of the majority working interest in the Unit. EOR asserted Hull had violated Rule 1.7(a) of the Oklahoma Rules of Professional Conduct in three ways: first, by stating that both Excalibur and XYZ own the majority working interest in the Unit; second, by letting the interests of Shroff predominate over the interests of XYZ and Avondale (by making arguments on behalf of XYZ and Avondale designed to protect Shroff from liability for executing agreements on behalf of the non-existent Excalibur; and third, by refusing to say whether he represented Excalibur to avoid personal exposure to a misdemeanor charge of violating 68 O.S.2011 § 1212. EOR additionally claimed that Hull sought to represent Excalibur by filing a notice of default under the PSA on behalf of XYZ, which was not a party to the PSA. EOR contended such conduct is subterfuge requiring disqualification. EOR finally complained that Hull had violated its duty of candor by stating that Excalibur would pay franchise taxes to be reinstated,[5]

3. Hull asserted he was appearing on behalf of Excalibur, which he claimed owned 89.6875% working interest in the unit and was the only party capable of voting to remove the Operator. Hull averred that Excalibur did not agree with EOR's allegations against Avondale, and denied that Avondale had breached the operating agreement as alleged in EOR's Petition. Hull asserted Excalibur sought an order allowing it to intervene to object to EOR's request for temporary restraining order, as well as an order denying the TRO and for attorney fees and other relief. Hull attached the affidavit of Shroff, and other materials, in support of his pleading.

4. Briefly summarized, EOR filed its Response to Request of Excalibur to Intervene April 20, 2011. EOR asserted Excalibur had been suspended January 10, 1997 for failure to pay franchise taxes and accordingly was not an existing Oklahoma corporation. EOR contended that at the April 5, 2011 hearing on EOR's application for temporary restraining order, Hull promised that Excalibur would pay the franchise taxes due and become a corporation in good standing by April 6, 2011, but that it had not done so by April 20, 2011. EOR asserted that because Excalibur was not in good standing, it could not intervene.

Also on April 20, 2011, Avondale filed its Motion to Dismiss, for failure to state a claim, in which it also sought to have the temporary restraining order dissolved, and EOR filed its Motion to Settle Form of Order (for temporary restraining order). In the next days, Avondale responded to EOR's motion to settle form, and EOR objected to the response.

EOR filed its Motion for Immediate Status Conference May 2, 2011, in which it claimed Avondale was acting in bad faith in the litigation. Avondale filed the same day its motion seeking a protective order quashing the notice of deposition of Abercrombie and seeking an order to mediate. These pleadings and the email messages attached reveal the parties had reached an impasse over whether EOR's responses to requests for documents were due April 28 or April 29, 2011. EOR contended Avondale refused to attend the May 2 mediation because the answers were delivered April 29. EOR claimed it provided the responses within ten days of the date the requests were received. Avondale filed a response to EOR's request for immediate status conference May 5, 2011, in which it denied acting in bad faith but agreed a status conference was necessary.

EOR responded to Avondale's Motion to Dismiss May 13, 2011. EOR filed an Amended Petition the same day, in which it added Shroff and XYZ as defendants. EOR sought a judgment declaring that Shroff was responsible for the acts, omissions and liabilities of Excalibur during the period it was suspended as a corporation and that the PSA, Workover Agreement, and Farmout Agreement were void because they were entered by Excalibur while it was suspended. EOR also made a claim for fraud against Shroff for inducing EOR to enter the PSA with a suspended corporation and for inducing EOR to pay over $1.2 million based on Shroff's fraudulent representations. EOR asserted it was entitled to rescind the PSA. EOR additionally made a claim for breach of contract against Shroff. EOR made similar claims against Avondale and Shroff for fraudulent representation, recission, and breach of the Operating Agreement, the Working Agreement, and the Farmout Agreement. Lastly, EOR sought a constructive trust or equitable lien on Shroff's and Avondale's interests in the Unit.

EOR filed May 17, 2011 its objection to Avondale's motion for protective order quashing deposition and seeking an order to mediate. A week later, EOR filed two applications seeking the immediate appointment of receivers for Excalibur and XYZ. At the same time, Avondale sought an order that its motion to dismiss was deemed confessed.

5. EOR has acknowledged that Shroff discovered Excalibur was never a corporation he was a part of and Shroff could not have Excalibur reinstated.

that Excalibur owned the majority working interest in the Unit, and that EOR had breached a contract with Excalibur.[6]

¶ 4 In response, Appellants contended that only after an investigation, following the April 5, 2011 hearing, did Shroff learn that his previous counsel had never filed documents to form Excalibur. Appellants averred that after that discovery, Shroff sought to have rights purportedly owned by Excalibur assigned to XYZ, which Shroff knew was a corporation in good standing. Appellants argued that the fact Shroff was mistaken about the existence of Excalibur showed Shroff and Hull never made intentional misrepresentations. Appellants denied there was a conflict and attached waivers of any conflict signed by Shroff and Abercrombie.

¶ 5 Following a hearing held September 7, 2011, the trial court issued its Order on Motion to Disqualify October 25, 2011. In its order, the trial court included 31 findings of fact. The court found EOR is a Delaware LLC; Avondale is Operator of the Unit; Excalibur was a corporation formed in 1973 which had no connection to Shroff and is not in good standing under the laws of Oklahoma; Shroff is President of XYZ, an Oklahoma corporation formed in 2008 and currently in good standing with the Oklahoma Secretary of State; EOR filed this action to oust Avondale as Operator; Hull filed a special appearance on behalf of Excalibur in which he sought to intervene to enforce the PSA; EOR filed an Amended Petition May 13, 2011, in which it added Shroff (d/b/a/ Excalibur) and XYZ as parties; and Hull represents Avondale, Shroff, and XYZ. The court further found that Shroff executed the PSA, as president of Excalibur, December 21, 2010, in which he sold an interest in the Unit; the PSA included a representation that the seller was a valid corporation in good standing and had marketable title to the property; Hull learned at an April 2011 hearing that Excalibur was not in good

standing with the Oklahoma Secretary of State; Shroff sought to correct the misuse of the Excalibur corporate name by a corrective assignment from EIG; XYZ now claims the right to receive proceeds from the sale of oil from the Unit; Hull caused documents (including a "correctional assignment" from EIG to XYZ dated April 15, 2011) purporting to vest title to a working interest in the Unit in XYZ to be filed in Creek County May 10, 2011; the interest XYZ claims in the Unit is the same as the interest claimed by Excalibur and subject to the PSA with EOR; Hull attempted to exercise XYZ's purported rights in the PSA May 16, 2011, when he sent a notice to EOR asserting default under the PSA, which he signed as counsel for XYZ; XYZ also contended EOR was clouding its title by claiming an interest under the PSA; Hull urged contradictory positions on behalf of two different clients by claiming EOR was in default under the PSA, which was executed by a defunct corporation, Excalibur, and by claiming that XYZ owned the property interest because of the corrective assignment; there was a direct conflict between Shroff (d/b/a/ Excalibur) and XYZ because both are asserting, through Hull, that they hold rights under the PSA (Shroff and XYZ both claim an interest in EOR's alleged default); whether Shroff (d/b/a/ Excalibur) or XYZ exercises rights under the PSA are substantive issues in direct conflict with each other; whether the PSA may be enforced by Shroff (d/b/a/ Excalibur) or XYZ is an issue to be resolved by litigation, but one attorney is arguing both positions on behalf of two clients; and Hull argued the positions of both Shroff (d/b/a/ Excalibur) and XYZ in a June 9, 2011 letter. The court noted that Hull had averred that if there was a conflict, Shroff and XYZ had waived it. The court found that Hull spoke to Shroff for twenty minutes about potential conflicts, but that only two minutes were devoted to a possible conflict between Shroff and XYZ, and that Shroff gave informed consent on behalf of XYZ in

6. EOR also argued below and in its appellate brief that Hull acted in bad faith generally by arbitrarily canceling mediation, ignoring the trial court's order to place disputed funds in escrow, and other similar acts. We do not approve of the conduct and tactics alleged, and they may be the proper subject of sanctions, but those allegations are not relevant to the question of a conflict of interest requiring disqualification of a party's chosen counsel. The trial court did not reach EOR's alternative request for sanctions and we do not consider those allegations in this appeal.

the same document in which he gave his personal consent to Hull's representation. The court noted Abercrombie had signed an affidavit stating his consent to Hull's possible conflict, but the court found no testimony or evidence about the information Hull gave Abercrombie to obtain his consent. The trial court next found that Hull failed to explain 68 O.S.2011 § 1212 to Shroff before the hearing on the motion to disqualify and Shroff was unaware of the possible consequences of operating a business that has been suspended by the Oklahoma Secretary of State, and Hull did not advise Shroff on the potential impact § 1212 could have on enforcement of the PSA. The court next noted that Hull argued it did not matter whether the interest in the Unit was held by Shroff (d/b/a Excalibur) or XYZ because they were one party, which the court held completely ignored the corporate structure of XYZ and Oklahoma corporations law; the court concluded Hull played fast and loose with corporate formalities by arguing that Shroff (d/b/a/ Excalibur) and XYZ were all the same client; and the court's last finding of fact was that Hull blurred the lines of corporate formality and thereby potentially exposed Shroff (d/b/a/ Excalibur) and XYZ to liability.

¶ 6 In making conclusions of law, the trial court first noted that a lawyer shall not represent a client if the representation involves a concurrent conflict of interest, citing Rule 1.7(a) of the Oklahoma Rules of Professional Conduct. The court concluded that Hull represented two clients with competing substantive positions asserted in the same case, namely, that Shroff sought to enforce the PSA he executed while doing business as Excalibur, while XYZ claimed the right to receive proceeds from the sale of oil from the same interest in the Unit and also attempted to enforce the PSA, in contending that EOR was clouding XYZ's title. The court found a direct conflict in Hull's attempts to enforce the PSA for both Shroff (d/b/a/ Excalibur) and XYZ. The trial court further found that the conflict caused actual harm. The court concluded that "Hull's representation of multiple clients asserting conflicting legal posi-

tions and exercising conflicting legal rights in the same case as well as disregarding the corporate formalities warrants disqualification of Hull as counsel for Avondale, Shroff and XYZ."

 ¶ 7 Appellants now appeal the order disqualifying Hull from representing any of them.[7] We review the order *de novo*, to determine whether real harm to the judicial process is likely to result if Hull is not disqualified. *Arkansas Valley State Bank v. Phillips*, 2007 OK 78, 171 P.3d 899.

> An order granting a motion to disqualify counsel is a final order subject to appellate review.... When reviewing the order, we review the trial court's findings of fact for clear error and carefully examine *de novo* the trial court's application of ethical standards.... A litigant's choice of counsel may be set aside under limited circumstances, where honoring the litigant's choice would threaten the integrity of the judicial process. This most often arises where an attorney's compliance with ethical standards of professional responsibility are challenged.... However, motions to disqualify counsel for failure to comply with the Rules of Professional Conduct are not to be used as procedural weapons. *Disqualification is such a drastic measure that it should be invoked if, and only if, the Court is satisfied that real harm is likely to result.*

*Id.* at ¶ 8 and ¶ 13 (emphasis added; footnotes omitted).

 ¶ 8 EOR contended, and the trial court agreed, that Hull's representation of Appellants violates Rule 1.7 of the Oklahoma Rules of Professional Conduct. That rule provides:

> (a) Except as provided in paragraph (b), a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if:

> (1) the representation of one client will be directly adverse to another client; or

7. In an order filed February 13, 2012, the Oklahoma Supreme Court stayed further proceedings in this case while this appeal is pending.

(2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer.

(b) Notwithstanding the existence of a concurrent conflict of interest under paragraph (a), a lawyer may represent a client if:

(1) the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client;

(2) the representation is not prohibited by law;

(3) the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal; and

(4) each affected client gives informed consent, confirmed in writing.

Under Rule 1.7, an actual concurrent conflict of interest will be found where the representation of one client is directly adverse to another client, or where there is a significant risk the representation of one client will be materially limited by the lawyer's responsibilities to another client. EOR has not articulated a conflict as to Avondale, nor explained how Hull's representation of Avondale impacts his representation of Shroff or Excalibur. We therefore only consider EOR's claims of a conflict in the positions of Excalibur and XYZ.

¶ 9 Appellants contend the trial court erred in finding a conflict, asserting Shroff and XYZ both seek to enforce the PSA as against EOR, but not as against each other. Appellants argue that whether Shroff's assignments from Excalibur to XYZ were ef-

fective, and therefore whether the PSA is enforceable against EOR generally and whether by Shroff or by XYZ, are questions for litigation, rather than a conflict requiring disqualification of their counsel. Appellants suggest there can be no conflict after the assignment, noting that Hull's clients claim only one interest under the PSA: the interest Shroff or Excalibur originally contracted for is the same interest purportedly assigned to XYZ. Appellants also contend that because Excalibur, as Shroff believed it to be, never existed, the Oklahoma Franchise Tax Code, 68 O.S.2011 § 1201 et seq., cannot apply to Shroff or Excalibur and the trial court erred in finding Shroff or Hull violated § 1212. Appellants further assert the trial court erred in finding Hull failed to properly explain that section to Shroff because it would not apply to what Shroff believed was Excalibur, which in fact never existed.

¶ 10 EOR contends that because Excalibur does not exist, it could not consent to a conflict, and that Shroff and XYZ each claimed the right to payment under the PSA so that their interests were in conflict and Hull could not represent both of them. We note that EOR and the trial court viewed the PSA as voidable because it was executed on behalf of a suspended corporation. Under Oklahoma law, however, the effect of that fact is that Shroff may be held personally liable under the agreement.[8] Conversely, Shroff has no standing to seek to enforce the PSA on behalf of Excalibur.[9] Accordingly, it is difficult to see any conflict between Shroff and XYZ. If Shroff and XYZ were trying to pin liability on each other, a conflict could be shown, but at this stage, neither has filed an Answer or made any claim against the other.

¶ 11 EOR does not dispute Shroff's contention that he mistakenly believed he had in-

---

8. In *McNitt Const., Inc. v. Economopoulos*, 2001 OK CIV APP 45, ¶ 4, 23 P.3d 983, the Oklahoma Court of Civil Appeals explained:

When a corporation's charter is suspended for failure to pay its franchise tax, its officers are liable as though they were partners for any corporate debts "created or incurred" during suspension with the officer's "knowledge, approval, or consent." 68 O.S.1991 § 1212(c). The legislative intent of this section is to prevent a suspended corporation from performing

any act. *Kearney v. Williams*, 1997 OK CIV APP 56, 946 P.2d 273, 275. Because the corporation has ceased to have the capacity to do business in the State of Oklahoma, corporate officers have only the power to create personal liability and cannot legally act for the corporation. *Id.*

9. *State ex rel. Christian v. McCauley*, 2008 OK CIV APP 77, ¶¶ 11–12, 193 P.3d 615; 68 O.S. 2011 § 1212.

corporated Excalibur and believed it was in good standing at the time he executed the PSA as president of Excalibur. EOR argues that Shroff (individually or d/b/a Excalibur, Inc.) was not a party to the PSA and could not assign it nor enforce it. Because Shroff or Excalibur could not act in this way, we find no conflict of interest presented by any purported representation of Excalibur. EOR also contends that because Excalibur could not assign the PSA to XYZ, then XYZ may not enforce the PSA. This statement additionally shows no conflict between Shroff and XYZ.

¶ 12 The trial court's questioning of Hull also shows there is no actual conflict. The trial court had determined that because Excalibur did not exist at the time the PSA was entered, there was no contract for Shroff to either enforce as Excalibur or assign to XYZ. Hull noted at the hearing that the issue of the validity of the contract and its enforceability (either by Shroff or by XYZ) were matters for litigation, but there could be no conflict where Excalibur did not exist.

¶ 13 The record shows that Hull represented Shroff when he executed the PSA mistakenly on behalf of Excalibur. The interest in the Unit which Excalibur purported to own in the PSA had been conveyed by EIG Petroleum, LLC.[10] After Hull and Shroff learned, at the April 5, 2011 hearing that Excalibur did not exist, they caused EIG to file a "Correctional Assignment, Bill of Sale and Conveyance" May 10, 2011. That document provided that any reference to Excalibur in the original Assignment, Bill of Sale and Conveyance was corrected to reflect XYZ. If that document was effective, then necessarily, any interest purportedly owned by Excalibur could not be enforced, by it if it existed or by Shroff, after the correctional assignment. Hull sought to enforce the PSA on behalf of either Shroff or XYZ, by serving notices of default on EOR, but because the PSA involves one interest, there is no way he

could enforce the PSA for both of them. While Shroff and XYZ are legally distinct parties, Hull correctly avers there is no real distinction nor adversity between them for purposes of the litigation.

■ ¶ 14 Even if we considered those two positions to be directly adverse and thereby showing a concurrent conflict, the inquiry does not end there. A concurrent conflict of interest may be waived under Rule 1.7(b). Hull has averred that he reasonably believes he will be able to diligently represent the interests of each client. As to Rule 1.7(b)(2), the representation is not illegal, despite EOR's claim that Hull has violated 68 O.S. 2011 § 1212 by seeking to enforce the PSA on behalf of Excalibur. Because Excalibur cannot sue or be sued, any such pleadings filed on behalf of Excalibur may be dismissed, but they do not amount to illegal representation. Indeed, EOR's contention that Hull has "played fast and loose with corporate formalities" indicates Hull may have engaged in conduct which could bind the parties in litigation (by removing any corporate shield, for example), but that conduct is not a basis for disqualification so long as the parties have consented. Similarly, the fact that the PSA erroneously stated that Excalibur was a valid corporate entity which owned the rights in the Unit may indicate a breach of the contract or material misrepresentation, but it does not show a concurrent conflict of interest to provide a basis for disqualifying Hull. As to Rule 1.7(b)(3), as we have noted above, Shroff and XYZ have not made claims against each other.

¶ 15 On the question presented by Rule 1.7(b)(4), the trial court found insufficient proof that Shroff and XYZ had knowingly waived the conflict, despite their signed waivers. Specifically, the court found that Hull failed to explain the implications of § 1212 to Shroff. However, because there is no dispute that Excalibur (as related to Shroff) never existed, we question what Hull would

---

10. The original Assignment, Bill of Sale and Conveyance, which conveyed 100% working interest and 75% net revenue interest in the Unit from EIG to Excalibur, was filed December 22, 2010. On the same date, an Assignment, Bill of Sale and Conveyance was filed by which Excalibur purported to convey an undivided 13.75% of 75% of all right title and interest held by Excalibur to EOR. A Correctional Assignment, Bill of Sale and Conveyance purporting to correct the name of the grantor in that conveyance, from Excalibur to XYZ, was filed and signed by Shroff as President of XYZ.

have explained about § 1212 to Shroff. We disagree with EOR that if a conflict existed here it was so egregious that it was non-waivable.

¶16 Our review of the record shows no true conflict between Shroff and XYZ. Although it is possible that once Appellants have filed an answer a true conflict may be revealed, we caution the parties that motions to disqualify are not to be used as procedural weapons. The question of whether any one of the Appellants may enforce the PSA is a proper subject for litigation, but the record shows Shroff and XYZ are not in conflict even though each has accused EOR of being in default under the PSA.

... a party litigant in a civil proceeding still has a fundamental right to employ and be heard by counsel of his or her own choosing. The right to select counsel without state interference is implied from the nature of the attorney-client relationship in our adversarial system of justice, where an attorney acts as the personal agent of the client and not the state. It is also grounded in the due process right of an individual to make decisions affecting litigation placing his or her property at risk. An individual's decision to employ a particular attorney can have profound effects on the ultimate outcome of litigation. Legal practitioners are not interchangeable commodities.

*Arkansas Valley, supra,* at ¶12. We have reviewed the record *de novo,* and find clear error in the trial court's finding of a concurrent conflict of interest and that real harm is likely to result from Hull's representation of Appellants. REVERSED.

JOPLIN, C.J., and BELL, J., concur.